SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Ricky Zuber (A-54-15) (076806)**
**State v. James Comer (A-63-15) (077318)**

**Argued October 27, 2016 -- Decided January 11, 2017**

**RABNER, C.J., writing for a unanimous Court.**

In these appeals, consolidated for purposes of this opinion, the Court considers whether the United States Supreme Court's determination in Miller v. Alabama, 567 U.S. ___, 132 S. Ct. 2455, 2460, 2469, 183 L. Ed. 2d 407, 414, 424 (2012), that "youth and its attendant characteristics" must be considered at the time a juvenile is sentenced to life imprisonment without the possibility of parole, should apply to sentences that are the practical equivalent of life without parole to satisfy the constitutional prohibition against cruel and unusual punishment.

For his role in two separate gang rapes in 1981, when he was seventeen years old, Ricky Zuber was sentenced on remand to 110 years in prison with 55 years of parole ineligibility. The Appellate Division affirmed the sentences. Under his revised aggregate sentence, Zuber will not be eligible for parole until about 2036, when he would be about 72 years old. In 2010, Zuber argued that his revised sentence was unconstitutional under Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). The trial court denied relief, and the Appellate Division affirmed. State v. Zuber, 442 N.J. Super. 611 (App. Div. 2015). The Court granted Zuber's petition for certification. 224 N.J. 245 (2016).

On April 17-18, 2000, when he was seventeen years old, James Comer participated in four armed robberies. During the second robbery, an accomplice shot and killed a victim. Comer was convicted of felony murder, three counts of armed robbery, weapons offenses, and theft. His aggregate sentence was 75 years in prison with 68 years and 3 months of parole ineligibility. Comer will not be eligible for parole until 2068, when he would be 85 years old. In 2014, after an unsuccessful direct appeal and motion for post-conviction relief, Comer filed a motion to correct an illegal sentence. He argued that his sentence amounted to life without parole, and was therefore illegal under Graham and Miller. When Comer was first sentenced in 2004, the trial judge was not required to evaluate the mitigating effects of youth. In a detailed written opinion, the same trial judge concluded in 2014 that, because he had not considered the Miller factors, Comer was entitled to be resentenced. The Court granted Comer's motion for direct certification of the trial court's 2014 judgment. 226 N.J. 205 (2016).

**HELD**: Sentencing judges should evaluate the Miller factors when a juvenile facing a lengthy term of imprisonment that is the practical equivalent of life without parole is first sentenced, to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Miller, supra, 567 U.S. ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. Given this holding, both Zuber and Comer are entitled to be resentenced. To stave off possible future constitutional challenges to the current sentencing scheme, the Court asks the Legislature to consider enacting a statute that would provide for later review of juvenile sentences that have lengthy periods of parole ineligibility.

1. As a threshold matter, the Court may consider Comer's case despite his previous direct appeal and post-conviction motion because a defendant may challenge an illegal sentence at any time. R. 3:21-10(b)(5). (p. 15)

2. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The provision applies to the States through the Fourteenth Amendment. Article I, Paragraph 12 of the New Jersey Constitution also bars "cruel and unusual punishments." N.J. Const. art. I, ¶ 12. The test for cruel and unusual punishment is generally the same under both the Federal and the State Constitutions. (pp. 16-17)

3. In Roper v. Simmons, 543 U.S. 551, 578, 125 S. Ct. 1183, 1200, 161 L. Ed. 2d 1, 28 (2005), the United States

1

Supreme Court declared capital punishment unconstitutional for juvenile offenders. The Court noted that a majority of States had rejected imposing the death penalty on juvenile offenders and stressed "[t]hree general differences between juveniles . . . and adults" that, taken together, mean that the "irresponsible conduct [of juveniles] is not as morally reprehensible as that of an adult." Id. at 569-70, 125 S. Ct. at 1195, 161 L. Ed. 2d at 21-22. (pp. 18-20)

4. Graham, supra, built on that foundation and held that the Eighth Amendment categorically forbids sentences of life without parole for juveniles convicted of non-homicide offenses. 560 U.S. at 82, 130 S. Ct. at 2034, 176 L. Ed. 2d at 850. The Court considered national sentencing practices, juveniles' capacity to change, the nature of life-without-parole sentences, and the reality that "[a] 16-year-old and a 75-year old each sentenced to life without parole receive the same punishment in name only." Id. at 70-71, 130 S. Ct. at 2028, 176 L. Ed. 2d at 843. The Court found that none of the traditional goals of sentencing—retribution, deterrence, incapacitation, and rehabilitation—justify life without parole for a juvenile. The Court held that the Eighth Amendment "forbids" life without parole "for a juvenile offender who did not commit homicide," and that the States must "give defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 74-75, 130 S. Ct. at 2029-30, 176 L. Ed. 2d at 845-46. (pp. 21-25)

5. In Miller, supra, the Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. Noting that mandatory sentences prevent consideration of the traits and mitigating qualities of youth, the Court outlined five factors for judges to consider in sentencing juveniles "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Ibid. (pp. 25-29)

6. In Montgomery v. Louisiana, 577 U.S. ___, ___ 136 S. Ct. 718, 734, 193 L. Ed. 2d 599, 619 (2016), the United States Supreme Court held that Miller applies retroactively. (p. 29)

7. Here, the Court finds that Miller's command that a sentencing judge "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," Miller, supra, 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424, applies with equal strength to a sentence that is the practical equivalent of life without parole. Defendants who serve lengthy term-of-years sentences that amount to life without parole should be no worse off than defendants whose sentences carry that formal designation. The focus at a juvenile's sentencing hearing belongs on the real-time consequences of the aggregate sentence. (pp. 30-33)

8. In State v. Yarbough, 100 N.J. 627, 643-44 (1985), the Court adopted six criteria to help trial courts decide whether to impose consecutive sentences. The Court now holds that a sentencing court must consider not only the factors in Yarbough but also the ones in Miller when it decides whether to impose consecutive sentences on a juvenile which may result in a lengthy period of parole ineligibility. Because of the overriding importance of that decision, the Court directs trial judges to exercise a heightened level of care before imposing multiple consecutive sentences on juveniles. Judges must do an individualized assessment of the juvenile about to be sentenced but should not resort to general life-expectancy tables when they determine the overall length of a sentence. (pp. 33-36)

9. The Court limits its decision to the question raised by these appeals—what should happen when a juvenile facing a very lengthy term of imprisonment is first sentenced. The Court notes, however, that even when judges begin to use the Miller factors at sentencing, a small number of juveniles will receive lengthy sentences with substantial periods of parole ineligibility. Graham left it to the States "to explore the means and mechanisms" to give defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, supra, 560 U.S. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 846. The Court observes that some States have already acted and encourages the Legislature to examine this issue to avoid a potential constitutional challenge in the future. (pp. 36-39)

10. On remand in both cases, the sentencing courts should consider the factors set forth in Miller. The judges should also consider any rehabilitative efforts since defendants' original sentences. (pp. 39-40)

Zuber's case is **REVERSED**, Comer's case is **AFFIRMED,** and both cases are **REMANDED** for resentencing consistent with the principles outlined in this opinion.

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.**

2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

        v.

RICKY ZUBER,

     Defendant-Appellant.

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

        v.

JAMES COMER,

     Defendant-Respondent.


Argued October 27, 2016 – Decided January 11, 2017

State v. Ricky Zuber (A-54-15):  On
certification to the Superior Court,
Appellate Division, whose opinion is
reported at 442 N.J. Super. 611 (App. Div.
2015).

State v. James Comer (A-63-15):  On appeal
from the Superior Court, Law Division, Essex
County.

James K. Smith, Jr., Assistant Deputy Public
Defender, argued the cause for appellant in
State v. Ricky Zuber (Joseph E. Krakora,
Public Defender, attorney).

Frank J. Ducoat, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued
the cause for appellant in State v. James

Comer and for respondent in State v. Ricky Zuber (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; LeeAnn Cunningham and Andrew R. Burroughs, Special Deputies Attorney General/Acting Assistant Prosecutors, on the briefs).

Lawrence S. Lustberg argued the cause for the respondent in State v. James Comer (Gibbons, attorneys; Mr. Lustberg, Avram D. Frey, and Alexander R. Shalom on the brief).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey in State v. Ricky Zuber (Edward L. Barocas, Legal Director, and Gibbons, attorneys; Mr. Shalom, Lawrence S. Lustberg, and Avram D. Frey, on the brief).

Joseph A. Glyn, argued the cause for amicus curiae Attorney General of New Jersey in State v. Ricky Zuber and State v. James Comer (Christopher S. Porrino, Attorney General, attorney).

Jonathan Romberg submitted a brief on behalf of amicus curiae Seton Hall University School of Law Center for Social Justice in State v. Ricky Zuber.

James I. McClammy submitted a brief on behalf of amicus curiae Fair Punishment Project in State v. James Comer (Davis Polk & Wardwell, attorneys).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

The defendants in these appeals committed very serious, violent crimes when they were juveniles. One is serving a sentence of 110 years' imprisonment and will not be eligible for parole until he spends 55 years in jail. At that time, he would be about 72 years old. The second is serving a 75-year term and

2

is ineligible for parole until he serves 68 years and 3 months in jail. He would be 85 years old then. Because of their young age at the time of their crimes, both defendants can expect to spend more than a half century in jail before they may be released -- longer than the time served by some adults convicted of first-degree murder.

When the sentences were originally imposed in these cases, the trial judges did not consider defendants' age or related circumstances. In the past decade, the United States Supreme Court has sent a clear message in that regard: "children are different" when it comes to sentencing, and "youth and its attendant characteristics" must be considered at the time a juvenile is sentenced to life imprisonment without the possibility of parole. Miller v. Alabama, 567 U.S. ___, 132 S. Ct. 2455, 2460, 2469, 183 L. Ed. 2d 407, 414, 424 (2012).

The Supreme Court recognized "the mitigating qualities of youth" and directed that judges in those cases consider a number of factors at sentencing, including immaturity and "failure to appreciate risks and consequences"; "family and home environment"; family and peer pressures; "an inability to deal with police officers or prosecutors" or the juvenile's own attorney; and "the possibility of rehabilitation." Id. at ___, 132 S. Ct. at 2467-68, 183 L. Ed. 2d at 422-23.

3

We find that the same concerns apply to sentences that are the practical equivalent of life without parole, like the ones in these appeals. The proper focus belongs on the amount of real time a juvenile will spend in jail and not on the formal label attached to his sentence. To satisfy the Eighth Amendment and Article I, Paragraph 12 of the State Constitution, which both prohibit cruel and unusual punishment, we direct that defendants be resentenced and that the Miller factors be addressed at that time.

We also recognize that the imposition of consecutive sentences on multiple counts of conviction often drives the outcome at sentencing. We conclude that, before a judge imposes consecutive terms that would result in a lengthy overall term of imprisonment for a juvenile, the court must consider the Miller factors along with other traditional concerns. See State v. Yarbough, 100 N.J. 627 (1985). In short, judges should exercise a heightened level of care before they impose multiple consecutive sentences on juveniles which would result in lengthy jail terms.

Finally, to stave off possible future constitutional challenges to the current sentencing scheme, we ask the Legislature to consider enacting a statute that would provide for later review of juvenile sentences that have lengthy periods

4

of parole ineligibility.  We note that a number of States have already done so.

We remand both cases for resentencing.

## I.

Defendant Ricky Zuber participated in two separate gang rapes in November and December 1981, when he was seventeen years old.  In the first, he and others forced a woman at knife-point to drive to a nearby cemetery, where the group raped her repeatedly and threatened her with disfigurement.  Afterward, the group abandoned the woman naked in the cemetery.  In the second incident, Zuber and others abducted a sixteen-year-old high school student, drove her to an unknown location, and raped her repeatedly.  Zuber was the "ringleader" of both assaults.

Zuber was charged as an adult in two separate indictments. After two trials, two juries convicted Zuber on a total of ten counts.  In 1983, the judge who presided over both trials sentenced Zuber, in the aggregate, to 150 years in prison with a 75-year period of parole ineligibility.  Under Zuber's initial sentence, he would not have become eligible for parole until about 2056, when he would be 92 years old.

The Appellate Division affirmed the sentences.  In 1988, this Court summarily remanded the sentences to the trial court for reconsideration under Yarbough.  State v. Zuber, 111 N.J. 643 (1988); State v. Zuber, 111 N.J. 650 (1988).  On remand, the

5

trial judge sentenced Zuber as follows for the gang rape committed in November 1981:

(1)  20 years' imprisonment with 10 years of parole ineligibility for first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1);

(2)  a consecutive term of 10 years' imprisonment with 5 years of parole ineligibility for second-degree robbery, N.J.S.A. 2C:15-1;

(3)  a second consecutive term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by vaginal penetration, N.J.S.A. 2C:14-2; and

(4)  a concurrent term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by anal penetration, N.J.S.A. 2C:14-2 -- which the court had originally imposed as a consecutive term.

The aggregate sentence for the November 1981 offense was 50 years' imprisonment with 25 years of parole ineligibility.

For the gang rape in December 1981, the court on remand imposed the following sentence:

(5)  20 years' imprisonment with 10 years of parole ineligibility for first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1);

(6) a consecutive term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree robbery, N.J.S.A. 2C:15-1;

(7) a second consecutive term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by vaginal penetration, N.J.S.A. 2C:14-2;

(8) a concurrent term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by anal penetration, N.J.S.A. 2C:14-2 -- which the court had originally imposed as a consecutive term;

(9) a concurrent term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by oral penetration, N.J.S.A. 2C:14-2; and

(10) a concurrent term of 5 years' imprisonment for third-degree unlawful possession of a knife, N.J.S.A. 2C:39-4(d).

The aggregate sentence for the December 1981 offense was 60 years' imprisonment with 30 years of parole ineligibility.

The judge ordered that the sentences for both sets of offenses run consecutively, which resulted in a total sentence of 110 years in prison with 55 years of parole ineligibility. The Appellate Division affirmed the sentences. Under his

7

revised aggregate sentence, Zuber will not be eligible for parole until about 2036, when he would be about 72 years old.[1]

In 2010, Zuber filed a pro se motion and argued that his revised sentence was unconstitutional under Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), in which the Supreme Court held that sentencing a juvenile to life without parole for a non-homicide offense violates the Eighth Amendment. The trial court denied relief, and the Appellate Division affirmed. State v. Zuber, 442 N.J. Super. 611, 614-15 (App. Div. 2015).

The appellate panel assumed but did not decide that Graham could apply to consecutive sentences that resulted in a term "equaling or exceeding the life expectancy of a person of defendant's age." Id. at 625. As part of its analysis, the panel used life-expectancy tables issued by the federal government to predict that Zuber would outlive his parole ineligibility period by about eight years. Id. at 627-30. The panel did not use tables "based on sex, race, or ethnicity," which it believed "would introduce disparities that are inconsistent with constitutional standards and penological goals." Id. at 633.

---

[1] We need not resolve the dispute in the record about the precise date that defendant will be eligible for parole. See State v. Zuber, 442 N.J. Super. 611, 630 n.12 (App. Div. 2015).

8

The Appellate Division concluded that Zuber's sentence did not violate Graham. Id. at 634. The panel explained that Zuber's "fifty-five years before parole eligibility is not the functional equivalent of life without parole, because it gives him a meaningful and realistic opportunity for parole well within the predicted lifespan for a person of [his] age." Id. at 614-15.

We granted Zuber's petition for certification. 224 N.J. 245 (2016).

II.

Defendant James Comer participated in four armed robberies in the evening of April 17 and the early morning of April 18, 2000. During the second robbery, Ibn Adams, an accomplice, shot and killed a victim. Comer was seventeen years old at the time of the robberies.

Comer was prosecuted as an adult. After a joint trial with Adams, a jury convicted Comer of multiple counts related to the robberies, including one count of felony murder. The trial judge sentenced Comer as follows:

(1) 30 years' imprisonment with 30 years of parole ineligibility for first-degree felony murder, N.J.S.A. 2C:11-3(a)(3);

9

(2-4) three consecutive terms of 15 years' imprisonment with an 85-percent period of parole ineligibility for three counts of first-degree armed robbery, N.J.S.A. 2C:15-1;

(5-9) five concurrent terms of 4 years' imprisonment for weapons offenses, N.J.S.A. 2C:39-5(b);

(10) one concurrent term of 4 years' imprisonment for theft, N.J.S.A. 2C:20-3(a).

Comer's aggregate sentence was 75 years in prison with 68 years and 3 months of parole ineligibility. Comer will not be eligible for parole until 2068, when he would be 85 years old.

Comer raised six arguments on appeal, including that his sentence was excessive. The Appellate Division affirmed his convictions and sentence, and this Court affirmed. State v. Adams, 194 N.J. 186, 191 (2008). Comer filed a petition for post-conviction relief in 2008, in which he challenged the imposition of consecutive sentences and raised several other claims. The trial judge denied relief. The Appellate Division remanded for an evidentiary hearing and later affirmed.

In 2014, Comer filed a motion to correct an illegal sentence. He argued that his sentence amounted to life without parole, and was therefore illegal under Graham and Miller. When Comer was first sentenced in 2004, the trial judge was not required to evaluate the mitigating effects of youth, which Miller later addressed. In a detailed written opinion, the same

10

trial judge concluded in 2014 that, because he had not considered the Miller factors, Comer was entitled to be resentenced.

We granted Comer's motion for direct certification of the trial court's 2014 judgment.  226 N.J. 205 (2016).  Because both appeals raise related issues, we consolidated them in a single opinion.

                                III.

                                A.

Zuber argues that his sentence violates the Eighth Amendment to the United States Constitution and Article 1, Paragraph 12 of the New Jersey Constitution because it was imposed "without any consideration of [his] age and attendant characteristics."  He submits that "both the letter and spirit" of Graham and Miller make clear that a State may not impose a term-of-years sentence that leaves a juvenile "eligible for parole only months before his predicted death."  Zuber contends that his sentence affords him neither a meaningful opportunity to obtain release nor a chance to reconcile with society.

Zuber also argues that the Appellate Division should not have relied on statistical life-expectancy tables.  Instead, he urges the Court to find that juvenile offenders who have served more than thirty years in prison must be considered for resentencing or parole.

11

The State argues that Zuber's sentence is not unconstitutional.  The State insists that Graham applies only to a juvenile sentence of life without parole for a single non-homicide offense.  As a result, the State contends that Graham does not extend to term-of-years or consecutive sentences, like Zuber's.  The State also submits that Graham does not call for "free crimes" when a juvenile commits multiple distinct offenses with different victims.  Zuber's sentence, the State argues, was constitutionally proportionate to the crimes he committed.

The State agrees that life-expectancy tables should not be used to determine the appropriate period of parole ineligibility.  In addition, the State claims that the trial court did consider Zuber's age and maturity when it sentenced him.

The Seton Hall University School of Law Center for Social Justice, appearing as amicus curiae, asks the Court to adopt a thirty-year maximum period of parole ineligibility as a uniform rule for juvenile offenders.  The Center argues that such a rule would provide juveniles a chance at parole at about age fifty and offer them genuine hope to spend some years outside of prison, beyond a mere geriatric release.  That approach, the Center submits, would also avoid the difficulties of life-expectancy calculations.  The Center alternatively argues that the Eighth Amendment requires "an individualized analysis of

each juvenile's life expectancy that accounts for his incarcerated status, race, and gender."

The American Civil Liberties Union of New Jersey (ACLU), also appearing as amicus, echoes Zuber's arguments about the scope of Graham and Miller. The ACLU proposes a bright-line rule that would allow juveniles to petition for resentencing and release at a point no later than thirty years into their sentences. For support, the ACLU points to social science evidence that juveniles tend to retreat from criminal activity as they enter adulthood, and that few continue to offend past age forty. The ACLU also cautions against the use of life-expectancy tables.

The Attorney General, as amicus, agrees with the State that Graham does not apply to Zuber's consecutive term-of-years sentences for offenses committed against two different victims. The Attorney General also argues against the use of life-expectancy tables that would result in a "race-based, gender-based, and income-based sentencing scheme." According to the Attorney General, New Jersey's traditional case law protects juvenile defendants against unreasonably long sentences.

B.

The State argues that Comer's motion is time-barred and also procedurally barred under Rules 3:21-10(a), 3:22-5, and 3:22-12. On the merits, the State maintains that Comer's

sentence does not violate the Eighth Amendment because he was not sentenced to mandatory life without parole, which Miller prohibits. The State also contends that Comer's aggregate sentence is not the functional equivalent of life without parole. In addition, the State argues that Comer's sentence for felony murder, a homicide offense, does not run afoul of Graham.

The Attorney General, appearing as amicus, agrees with the State that Comer's term-of-years sentence neither implicates nor violates Miller or Graham. The Attorney General observes that other jurisdictions have not extended those rulings to term-of-years sentences. The Attorney General maintains that Comer received four individualized, consecutive sentences for his offenses, as the law permits.

Comer raises the following arguments: there are no procedural or other bars to the relief he seeks; his sentence is indistinguishable from a sentence of life without parole; life without parole, including de facto life without parole, is unconstitutional for all juveniles regardless of the offense; both the Federal and State Constitutions protect against life without parole for juveniles; Graham forbids life without parole for juveniles who neither kill nor intend to kill; and his sentence was imposed in violation of Miller and Montgomery v. Louisiana, 577 U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016).

14

The Fair Punishment Project, as amicus, submits that Comer's sentence is unconstitutional because it "ignores the fundamental differences between children and adults that the U.S. Supreme Court has repeatedly held are constitutionally relevant to juvenile sentencing." The Project argues that because juveniles continue to develop and mature, their sentences should be reviewed within ten to fifteen years of the offense and at regular intervals afterward.

IV.

A defendant may challenge an illegal sentence at any time. R. 3:21-10(b)(5); State v. Acevedo, 205 N.J. 40, 47 n.4 (2011). An "illegal sentence" is one "not imposed in accordance with the law." Id. at 45 (quoting State v. Murray, 162 N.J. 240, 247 (2000)). That includes a sentence "imposed without regard to some constitutional safeguard," State v. Tavares, 286 N.J. Super. 610, 618 (App. Div.), certif. denied, 144 N.J. 376 (1996), which defendants claim is the case here.

In addition, although Comer challenged certain aspects of his sentence on direct appeal and in a post-conviction motion, he now raises for the first time arguments based on the Supreme Court's recent rulings in Graham, Miller, and Montgomery. Because the law permits both defendants to challenge the legality of their sentences, we proceed to the merits.

15

V.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The provision applies to the States through the Fourteenth Amendment. Roper v. Simmons, 543 U.S. 551, 560, 125 S. Ct. 1183, 1190, 161 L. Ed. 2d 1, 16 (2005); Robinson v. California, 370 U.S. 660, 666, 82 S. Ct. 1417, 1420, 8 L. Ed. 2d 758, 763 (1962).

The Eighth Amendment prohibition against excessive punishment "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to the offense.'" Roper, supra, 543 U.S. at 560, 125 S. Ct. at 1190, 161 L. Ed. 2d at 16 (brackets removed) (quoting Atkins v. Virginia, 536 U.S. 304, 311, 122 S. Ct. 2242, 2246, 153 L. Ed. 2d 335, 344 (2002)). Courts interpret the Eighth Amendment "according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design." Ibid. That often requires "refer[ence] to 'the evolving standards of decency that mark the progress of a maturing society.'" Id. at 561, 125 S. Ct. at 1190, 161 L. Ed. 2d at 16 (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S. Ct. 590, 598, 2 L. Ed. 2d 630, 642 (1958) (plurality opinion)).

16

Article I, Paragraph 12 of the New Jersey Constitution also bars "cruel and unusual punishments." N.J. Const. art. I, ¶ 12. "The test to determine whether a punishment is cruel and unusual . . . is generally the same" under both the Federal and State Constitutions. State v. Ramseur, 106 N.J. 123, 169 (1987). The test poses three questions: "First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?" Ibid. (citing Gregg v. Georgia, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925, 49 L. Ed. 2d 859, 874-75 (1976)).

As in other contexts, the State Constitution can offer greater protection in this area than the Federal Constitution commands. See, e.g., State v. Gerald, 113 N.J. 40, 76 (1988) (finding that Article I, Paragraph 12 "affords greater protections to capital defendants than does the eighth amendment of the federal constitution"), superseded by constitutional amendment, N.J. Const. art. 1, ¶ 12 (effective Dec. 3, 1992).

A.

On four occasions in the past dozen years, the United States Supreme Court has considered how the Eighth Amendment applies to sentences imposed on juveniles. In each instance, the Court set limits on those sentences after it considered

17

relevant social science evidence about how juveniles differ from adults.

1.

We begin with the Supreme Court's groundbreaking decision in Roper v. Simmons.  In that case, the Court declared capital punishment unconstitutional for juvenile offenders.  Roper, supra, 543 U.S. at 578, 125 S. Ct. at 1200, 161 L. Ed. 2d at 28. The defendant, Christopher Simmons, had planned and committed a murder when he was seventeen years old and still a junior in high school.  Id. at 556, 125 S. Ct. at 1187, 161 L. Ed. 2d at 13.  He was tried and convicted as an adult, and the trial judge accepted the jury's recommendation to impose the death penalty. Id. at 558, 125 S. Ct. at 1189, 161 L. Ed. 2d at 14-15.

In a post-conviction proceeding, the Missouri Supreme Court pointed to "a national consensus . . . against the execution of juvenile offenders" and set aside Simmons' sentence in favor of life imprisonment without parole.  Id. at 559-60, 125 S. Ct. at 1189, 161 L. Ed. 2d at 15.

The United States Supreme Court affirmed.  Id. at 560, 125 S. Ct. at 1190, 161 L. Ed. 2d at 15.  At first, the Court catalogued the trend among a majority of States that "have rejected the imposition of the death penalty on juvenile offenders."  Id. at 564-68, 125 S. Ct. at 1192-94, 161 L. Ed. 2d at 18-21.  The Court then explained that "the death penalty is

18

reserved for a narrow category of crimes and offenders." Id. at 569, 125 S. Ct. at 1195, 161 L. Ed. 2d at 21. At the heart of the Court's analysis are its observations of "[t]hree general differences between juveniles under 18 and adults," which "demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." Ibid.

First, the Court explained, "as any parent knows and as the scientific and sociological studies . . . tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.'" Ibid. (quoting Johnson v. Texas, 509 U.S. 350, 367, 113 S. Ct. 2658, 2668, 215 L. Ed. 2d 290, 306 (1993)). Because of those qualities, juveniles are more likely to take "impetuous and ill-considered actions," ibid., and are "overrepresented statistically in virtually every category of reckless behavior," id. at 569, 125 S. Ct. at 1195, 161 L. Ed. 2d at 21-22 (citing Jeffrey Arnett, Reckless Behavior in Adolescence: A Developmental Perspective, 12 Developmental Rev. 339 (1992)).

Second, the Court observed that "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." Id. at 569, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22. They "have less control, or less experience with control, over their own environment." Ibid.

19

Third, the Court noted "that the character of a juvenile is not as well formed as that of an adult.  The personality traits of juveniles are more transitory, less fixed."  Id. at 570, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22.

Taken together, those differences mean that the "irresponsible conduct [of juveniles] is not as morally reprehensible as that of an adult."  Ibid. (quoting Thompson v. Oklahoma, 487 U.S. 815, 835, 108 S. Ct. 2687, 2699, 101 L. Ed. 2d 702, 719 (1988) (plurality opinion)).  Juveniles "have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment," and there is "a greater possibility . . . that a minor's character deficiencies will be reformed."  Id. at 570, 125 S. Ct. at 1195-96, 161 L. Ed. 2d at 22.

Because "the signature qualities of youth are transient," "impetuousness and recklessness . . . can subside" as juveniles mature.  Id. at 570, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22 (quoting Johnson, supra, 509 U.S. at 368, 113 S. Ct. at 2669, 125 L. Ed. 2d at 306).  However, the Court recognized that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption."  Id. at 573, 125 S. Ct. at 1197, 161 L. Ed. 2d at 24.

20

2.

The Supreme Court's decision in Graham v. Florida built on that foundation. In 2010, Graham, supra, held that the Eighth Amendment categorically forbids sentences of life without parole for juveniles convicted of non-homicide offenses. 560 U.S. at 82, 130 S. Ct. at 2034, 176 L. Ed. 2d at 850.

The defendant, Terrance Jamar Graham, tried to rob a restaurant when he was sixteen years old. Id. at 53, 130 S. Ct. at 2018, 176 L. Ed. 2d at 832. He was arrested and charged as an adult with armed burglary and attempted armed robbery. Ibid. Graham pled guilty to both charges and was sentenced to probation. Id. at 54, 130 S. Ct. at 2018, 176 L. Ed. 2d at 832. Less than six months later, he violated probation; the trial court found he committed a home invasion robbery and possessed a firearm. Id. at 55, 130 S. Ct. at 2019, 176 L. Ed. 2d at 833. The court revoked Graham's probation and sentenced him on the original charges to "life imprisonment for the armed burglary and 15 years for the attempted armed robbery." Id. at 57, 130 S. Ct. at 2020, 176 L. Ed. 2d at 834. Because Florida had abolished its parole system, he had "no possibility of release." Id. at 57, 130 S. Ct. at 2020, 176 L. Ed. 2d at 834-35.

The United States Supreme Court reversed the state court's judgment and rested its ruling on a number of grounds. First, as in Roper, the Court pointed to "objective indicia of national

21

consensus." Id. at 62, 130 S. Ct. at 2023, 176 L. Ed. 2d at 837.  The Court found that although relatively few States barred life without parole for juveniles for non-homicide offenses, ibid., "actual sentencing practices" revealed how rarely those sentences are imposed, id. at 64-65, 130 S. Ct. at 2024, 176 L. Ed. 2d at 839.

Second, the Court stressed its findings in Roper about the nature of juveniles.  Id. at 68, 130 S. Ct. at 2026, 176 L. Ed. 2d at 841.  The Court noted that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds."  Ibid.  The Court identified, as a key difference, that "parts of the brain involved in behavior control continue to mature through late adolescence."  Ibid.  As a result, "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character.'"  Ibid. (quoting Roper, supra, 543 U.S. at 570, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22).

As to the types of offenses to which life without parole might apply, the Court "recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers."  Id. at 69, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842.  Although robbery and rape, for example,

22

are serious crimes that warrant serious punishment, they "differ from homicide crimes in a moral sense." Ibid. Thus, "a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability." Ibid.

The Court next considered the nature of life-without-parole sentences, "the second most severe penalty permitted by law." Ibid. (quoting Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S. Ct. 2680, 2705, 115 L. Ed. 2d 836, 869 (1991) (Kennedy, J., concurring)). The Court noted that for a defendant, life without parole "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." Id. at 70, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842 (alteration in original) (quoting Naovarath v. State, 779 P.2d 944, 944 (Nev. 1989)). The Court also observed that

> [l]ife without parole is an especially harsh punishment for a juvenile. Under this sentence a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender. A 16-year-old and a 75-year-old each sentenced to life without parole receive the same punishment in name only. This reality cannot be ignored.
>
> [Id. at 70-71, 130 S. Ct. at 2028, 176 L. Ed. 2d at 843 (citations omitted).]

23

The Court found that none of the traditional goals of sentencing provide an "adequate justification" for life without parole for a juvenile. Id. at 71, 130 S. Ct. at 2028, 176 L. Ed. 2d at 843 (citation omitted). Retribution, which relates directly to the offender's personal culpability, "does not justify imposing the second most severe penalty on the less culpable juvenile nonhomicide offender." Id. at 71-72, 130 S. Ct. at 2028, 176 L. Ed. 2d at 843-44.

Deterrence fails as a justification for a similar reason. Because juveniles are less responsible and more prone to "'impetuous and ill-considered actions and decisions,' they are less likely to take a possible punishment into consideration when making decisions." Id. at 72, 130 S. Ct. at 2028-29, 176 L. Ed. 2d at 844 (quoting Johnson, supra, 509 U.S. at 367, 113 S. Ct. at 2669, 125 L. Ed. 2d at 306).

Incapacitation also does not justify life without parole because it assumes that a juvenile convicted of a non-homicide crime "forever will be a danger to society." Id. at 72, 130 S. Ct. at 2029, 176 L. Ed. 2d at 844. The Court repeated its warning in Roper that even experts cannot determine at the outset that a juvenile is irreparably corrupt. Id. at 72-73, 130 S. Ct. at 2029, 176 L. Ed. 2d at 844.

The Court also dismissed the notion that life without parole could promote rehabilitation, because defendants are

24

denied the right to reenter society.  Id. at 74, 130 S. Ct. at 2029-30, 176 L. Ed. 2d at 845.

The Court held that the Eighth Amendment "forbids" life without parole "for a juvenile offender who did not commit homicide," but added that "[a] State is not required to guarantee eventual freedom to" those offenders.  Id. at 74-75, 130 S. Ct. at 2029-30, 176 L. Ed. 2d at 845.  The State must, however, "give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  Id. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 845-46.  The Court did not define "meaningful opportunity." Instead, it noted that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance." Id. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 846.

The Court concluded that "[t]he Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life."  Ibid.  But the Constitution "does prohibit states from making the judgment at the outset that those offenders never will be fit to reenter society."  Ibid. (emphasis added).

3.

Miller v. Alabama adds another important dimension to the law on juvenile sentencing.  In Miller, supra, the Court held that "the Eighth Amendment forbids a sentencing scheme that

25

mandates life in prison without possibility of parole for juvenile offenders."  567 <u>U.S.</u> at ___, 132 <u>S. Ct.</u> at 2469, 183 <u>L. Ed.</u> 2d at 424.

Miller involved two fourteen-year-olds convicted of murder and sentenced to mandatory life without parole.  <u>Id.</u> at ___, 132 <u>S. Ct.</u> at 2460, 183 <u>L. Ed.</u> 2d at 414.  One juvenile, Kuntrell Jackson, was charged as an adult with capital felony murder and aggravated robbery for his role in the robbery of a video store. <u>Id.</u> at ___, 132 <u>S. Ct.</u> at 2461, 183 <u>L. Ed.</u> 2d at 415.  An accomplice shot and killed the store clerk during the robbery. <u>Ibid.</u>  A jury convicted Jackson of both crimes, and a judge imposed a sentence of life without parole, which Arkansas law required.  <u>Ibid.</u> (citing <u>Ark. Code. Ann.</u> § 5-5-104(b) (1997)). The other juvenile, Evan Miller, was charged as an adult with murder in the course of arson for beating a neighbor with a baseball bat and then lighting two fires to cover up the crime. <u>Id.</u> at ___, 132 <u>S. Ct.</u> at 2462-63, 183 <u>L. Ed.</u> 2d at 416-17.  A jury found Miller guilty of the crime, which "carries a mandatory minimum punishment of life without parole" in Alabama. <u>Id.</u> at ___, 132 <u>S. Ct.</u> at 2463, 183 <u>L. Ed.</u> 2d at 417 (citing <u>Ala. Code</u> §§ 13A-5-40(9), 13A-6-2(c) (1982)).

To review those sentences, the Court returned to principles it had outlined in <u>Roper</u> and <u>Graham</u>, namely, that "children are constitutionally different from adults for purposes of

26

sentencing" and "have diminished culpability and greater prospects for reform." Id. at ___, 132 S. Ct. at 2464, 183 L. Ed. 2d at 418. The Court reiterated that "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." Id. at ___, 132 S. Ct. at 2465, 183 L. Ed. 2d at 420. But mandatory penalty schemes, the Court noted, "prevent the sentencer from taking account of" "youth and its attendant characteristics." Id. at ___, 132 S. Ct. at 2460, 2466, 183 L. Ed. 2d at 414, 420. "That contravenes Graham's (and also Roper's) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." Id. at ___, 132 S. Ct. at 2466, 183 L. Ed. 2d at 421.

The Court also invoked a second line of precedent that "demand[s] individualized sentencing when imposing the death penalty." Id. at ___, 132 S. Ct. at 2467, 183 L. Ed. 2d at 421-22 (citations omitted). In those rulings, the Court "insisted . . . that a sentencer have the ability to consider the 'mitigating qualities of youth.'" Id. at ___, 132 S. Ct. at 2467, 183 L. Ed. 2d at 422 (quoting Johnson, supra, 509 U.S. at 367, 113 S. Ct. at 2669, 125 L. Ed. 2d at 306).

Against that backdrop, the Court outlined five factors ("the Miller factors"), which are particularly instructive for sentencing judges:

Mandatory life without parole for a juvenile

[1] precludes consideration of his chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences.

[2] It prevents taking into account the family and home environment that surrounds him -- and from which he cannot usually extricate himself -- no matter how brutal or dysfunctional.

[3] It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.

[4] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

[5] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

[Id. at ___, 132 S. Ct. at 2468, 183 L. Ed. 2d at 423. (citations omitted).]

Once again, the Supreme Court did not "foreclose" life without parole for juveniles convicted of a homicide offense. Id. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424. But the Court required sentencing judges "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Ibid. In the end, citing Roper and Graham, the Court observed

28

that the "harshest possible penalty will be uncommon" because of how difficult it is to conclude at an early age that a juvenile is irreparably corrupt. Ibid.

4.

In 2016, the Court held that Miller "announced a substantive rule of constitutional law" that applies retroactively. Montgomery, supra, 577 U.S. at ___, 136 S. Ct. at 734, 193 L. Ed. 2d at 619. The defendant, Henry Montgomery, was sentenced to life without parole for killing a deputy sheriff in 1963, when Montgomery was seventeen years old. Id. at ___, 136 S. Ct. at 725-26, 193 L. Ed. 2d at 610. The Court captured the essence of the ruling at the very end of the decision:

> Henry Montgomery has spent each day of the past 46 years knowing he was condemned to die in prison. Perhaps it can be established that, due to exceptional circumstances, this fate was a just and proportionate punishment for the crime he committed as a 17-year-old boy. In light of what this Court has said in Roper, Graham, and Miller about how children are constitutionally different from adults in their level of culpability, however, prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored.
>
> [Id. at ___, 136 S. Ct. at 736-37, 193 L. Ed. 2d at 622-23.]

29

Will a juvenile be imprisoned for life, or will he have a chance at release?  It does not matter to the juvenile whether he faces formal "life without parole" or multiple term-of-years sentences that, in all likelihood, will keep him in jail for the rest of his life.  We believe it does not matter for purposes of the Federal or State Constitution either.

Miller's command that a sentencing judge "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," Miller, supra, 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424, applies with equal strength to a sentence that is the practical equivalent of life without parole.  Defendants who serve lengthy term-of-years sentences that amount to life without parole should be no worse off than defendants whose sentences carry that formal designation.  The label alone cannot control; we decline to elevate form over substance.

Some State courts have reached the same conclusion.  See, e.g., People v. Caballero, 282 P.3d 291, 295 (Cal. 2012); Casiano v. Comm'r of Corr., 115 A.3d 1031, 1044 (Conn. 2015), cert. denied, ___ U.S. ___, 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016); Henry v. State, 175 So. 3d 675, 680 (Fla. 2015); Brown v. State, 10 N.E.3d 1, 8 (Ind. 2014); State v. Null, 836 N.W.2d 41, 71 (Iowa 2013); Cloud v. State, 334 P.3d 132, 144 (Wyo.

2014); see also Moore v. Biter, 725 F.3d 1184, 1191-92 (9th Cir. 2013).

Others have not. See, e.g., Adams v. State, 707 S.E.2d 359, 365 (Ga. 2011); State v. Brown, 118 So. 3d 332, 332 (La. 2013); Vasquez v. Commonwealth, 781 S.E.2d 920, 926 (Va.), cert. denied, ___ U.S. ___, ___ S. Ct. ___, 196 L. Ed. 2d 448 (2016); see also Bunch v. Smith, 685 F.3d 546, 551 (6th Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 1996, 185 L. Ed. 2d 865 (2013).

The focus at a juvenile's sentencing hearing belongs on the real-time consequences of the aggregate sentence. To that end, judges must evaluate the Miller factors when they sentence a juvenile to a lengthy period of parole ineligibility for a single offense. They must do the same when they consider a lengthy period of parole ineligibility in a case that involves multiple offenses at different times -- when judges decide whether to run counts consecutively, and when they determine the length of the aggregate sentence.[2]

---

[2] The State suggests that New Jersey law already addresses Miller's concerns. We do not agree. Certain sentencing factors touch on a defendant's youthful status. See, e.g., N.J.S.A. 2C:44-1(b)(13) ("The conduct of a youthful defendant was substantially influenced by another person more mature than the defendant."); see also N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense."). But youth and its attendant circumstances, as discussed in Miller, are not independently weighed as statutory mitigating factors.

31

To be clear, we find that the force and logic of Miller's concerns apply broadly:  to cases in which a defendant commits multiple offenses during a single criminal episode; to cases in which a defendant commits multiple offenses on different occasions; and to homicide and non-homicide cases.

With regard to Comer, the State argues that Graham cannot apply to a sentence for a homicide offense.  "But none of what [Graham] said about children -- about their distinctive (and transitory) mental traits and environmental vulnerabilities -- is crime-specific.  Those features are evident in the same way, and to the same degree, when . . . a botched robbery turns into a killing."  Miller, supra, 567 U.S. ___, 132 S. Ct. at 2465, 183 L. Ed. 2d at 420.  Indeed, the principles in Graham are at the heart of Roper, Miller, and Montgomery as well.  They teach us, in essence, that youth matters under the Constitution.  We believe that youth matters in each case that calls for a lengthy sentence that is the practical equivalent of life without parole.

The term-of-years sentences in these appeals -- a minimum of 55 years' imprisonment for Zuber and 68 years and 3 months for Comer -- are not officially "life without parole."  But we find that the lengthy term-of-years sentences imposed on the juveniles in these cases are sufficient to trigger the protections of Miller under the Federal and State Constitutions.

32

See Casiano, supra, 115 A.3d at 1044 (50-year sentence without possibility of parole is subject to Miller); Null, supra, 836 N.W.2d at 71 (minimum sentence of 52.5 years' imprisonment invokes Miller). Defendants' potential release after five or six decades of incarceration, when they would be in their seventies and eighties, implicates the principles of Graham and Miller.

Existing case law addresses some relevant concerns. In Yarbough, the Court adopted six criteria to help trial courts decide whether to impose consecutive sentences:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;
>>
>> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>>
>> (d) any of the crimes involved multiple victims;

33

> (e) the convictions for which the
> sentences are to be imposed are numerous;
>
> (4) there should be no double counting of
> aggravating factors;
>
> (5) successive terms for the same offense
> should not ordinarily be equal to the
> punishment for the first offense; and
>
> (6) there should be an overall outer limit on
> the cumulation of consecutive sentences for
> multiple offenses not to exceed the sum of the
> longest terms (including an extended term, if
> eligible) that could be imposed for the two
> most serious offenses.[3]
>
> [Yarbough, supra, 100 N.J. at 643-44
> (footnotes omitted).]

To be sure, the decision whether sentences for different counts of conviction should run consecutively or concurrently often drives the real-time outcome at sentencing. The cases before us make that clear. For Zuber, six consecutive counts resulted in 110 years' incarceration with 55 years of parole ineligibility. For Comer, four consecutive counts amounted to 75 years' imprisonment with 68 years and 3 months of parole ineligibility. Because of how young they were at the time of their offenses, both defendants will likely serve more time in jail than an adult sentenced to actual life without parole. See Miller, supra, 567 U.S. at ___, 132 S. Ct. at 2468, 183 L. Ed.

---

[3] In 1993, the Legislature amended N.J.S.A. 2C:44-5(a) to provide that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." L. 1993, c. 223.

2d at 422; Graham, supra, 560 U.S. at 70, 130 S. Ct. at 2028, 176 L. Ed. 2d at 843.

Yarbough, however, does not cover the Miller factors. To be faithful to the concerns that Graham and Miller highlight, which our State Constitution embraces as well, a sentencing court must consider not only the factors in Yarbough but also the ones in Miller when it decides whether to impose consecutive sentences on a juvenile which may result in a lengthy period of parole ineligibility. Because of the overriding importance of that decision, we direct trial judges to exercise a heightened level of care before imposing multiple consecutive sentences on juveniles.

In all of those cases, consistent with settled law, judges must do an individualized assessment of the juvenile about to be sentenced -- with the principles of Graham and Miller in mind. Judges, of course, are to consider the nature of the offense, the juvenile's history, and relevant aggravating and mitigating factors. They should apply Miller's template as well when they consider a lengthy, aggregate sentence that amounts to life without parole.

Judges, however, should not resort to general life-expectancy tables when they determine the overall length of a sentence. Those tables rest on informed estimates, not firm dates, and the use of factors like race, gender, and income

35

could raise constitutional issues. For that reason, the Appellate Division did not use tables based on sex, race, or ethnicity. Zuber, supra, 442 N.J. Super. at 633; see also Null, supra, 836 N.W.2d at 71 (noting that whether Miller or Graham should "apply in a given case should [not] turn on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates").

C.

Neither Graham nor Miller foreclosed life without parole for juveniles. Miller, supra, 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424; Graham, supra, 560 U.S. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 846. At the same time, the Court stressed that it is only the "rare juvenile offender whose crime reflects irreparable corruption." Miller, supra, 567 U.S. at ___, 132 S. Ct. at 2469, 183 L. Ed. 2d at 424 (quoting Roper, supra, 543 U.S. at 573, 125 S. Ct. at 1197, 161 L. Ed. 2d at 24). And, even for experts, it is difficult at an early age to differentiate between the immature offender who may reform and the juvenile who is irreparably corrupt. Ibid.; Roper, supra, 543 U.S. at 573, 125 S. Ct. at 1197, 161 L. Ed. 2d at 24. It is even harder for a judge to make that determination at the moment the juvenile offender appears for sentencing.

These appeals require us to address what should happen when a juvenile facing a very lengthy term of imprisonment is first

36

sentenced.  As discussed above, we hold that sentencing judges should evaluate the Miller factors at that time to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  Miller, supra, 567 U.S. ___ , 132 S. Ct. at 2469, 183 L. Ed. 2d at 424.

But Graham adds a challenging dimension.  It explains that the Constitution "prohibit[s] States from making the judgment at the outset that [a juvenile] never will be fit to reenter society."  Graham, supra, 560 U.S. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 846 (emphasis added).  The Court later highlighted that Graham's sentence violated the Eighth Amendment because the State "denied him any chance to later demonstrate that he is fit to rejoin society."  Id. at 79, 130 S. Ct. at 2033, 176 L. Ed. 2d at 848 (emphasis added).

We recognize that, even when judges begin to use the Miller factors at sentencing, a small number of juveniles will receive lengthy sentences with substantial periods of parole ineligibility, particularly in cases that involve multiple offenses on different occasions or multiple victims.  Imagine a sentence with a 50-year period of parole ineligibility imposed on a juvenile today.  Decades from now, before he becomes eligible for parole, he might return to court to challenge the constitutionality of his sentence.  He might ask the court to

37

review factors that could not be fully assessed when he was originally sentenced -- like whether he still fails to appreciate risks and consequences, or whether he may be, or has been, rehabilitated. <u>Miller</u>, <u>supra</u>, 567 <u>U.S.</u> ___, 132 <u>S. Ct.</u> at 2468, 183 <u>L. Ed.</u> 2d at 423.

We cannot address such a claim now. We simply recognize that it would raise serious constitutional issues about whether sentences for crimes committed by juveniles, which carry substantial periods of parole ineligibility, must be reviewed at a later date.

To avoid a potential constitutional challenge in the future, we encourage the Legislature to examine this issue. <u>Graham</u> left it to the States "to explore the means and mechanisms" to give defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." <u>Graham</u>, <u>supra</u>, 560 <u>U.S.</u> at 75, 130 <u>S. Ct.</u> at 2030, 176 <u>L. Ed.</u> 2d at 846. Some legislatures have already acted.[4]

---

[4]  See, e.g., <u>Cal. Penal Code</u> §§ 1170(d)(2)(A)(i) (allowing juveniles sentenced to life without parole to petition court for resentencing after 15 years), 3051(b) (2016) (providing parole eligibility for juveniles after 15, 20, or 25 years, depending on length of original sentence); <u>Del. Code. Ann.</u> tit. 11, § 4204A(d)(1)-(2) (2016) (providing for judicial review of sentence for juvenile offenders after 30 years for first-degree homicide and after 20 years for other offenses); <u>Fla. Stat.</u> § 921.1402 (2016) (providing for judicial review of sentences for

We ask the Legislature to consider enacting a scheme that provides for later review of juvenile sentences with lengthy periods of parole ineligibility, and to consider whether defendants should be entitled to appointed counsel at that hearing. To the extent the parties and amici urge this Court to impose a maximum limit on parole ineligibility for juveniles of thirty years, we defer to the Legislature on that question.

VI.

In light of the above analysis, Zuber is entitled to be resentenced. At a new sentencing hearing, the trial court should consider the Miller factors when it determines the length of his sentence and when it decides whether the counts of

---

juvenile offenders of at least 15 years after 15, 20, or 25 years, depending on length of original sentence, and establishing right to counsel); Mont. Code Ann. § 46-18-222(1) (2016) (exempting juvenile offenders from sentences of life without parole and restrictions on parole eligibility); N.C. Gen. Stat. § 15A-1340.19A (2016) (providing parole eligibility after 25 years for juvenile offenders convicted of first-degree murder); Wash. Rev. Code § 9.94A.730(1) (2016) (allowing juvenile offenders to petition sentence review board for release after 20 years); W. Va. Code § 61-11-23(b) (2016) (providing parole eligibility after 15 years for juvenile offenders sentenced to more than 15 years); Wyo. Stat. Ann. § 6-10-301(c) (2016) (providing parole eligibility after 25 years for juvenile offenders sentenced to life in prison).

Our Legislature has expressed similar concerns in other areas. Under the "Three Strikes Law," N.J.S.A. 2C:43-7.1(e), for example, certain offenders sentenced to life imprisonment without parole who are at least 70 years old and have served at least 35 years in prison shall be eligible for parole.

conviction should run consecutively.  In short, the court should consider factors such as defendant's "immaturity, impetuosity, and failure to appreciate risks and consequences"; "family and home environment"; family and peer pressures; "inability to deal with police officers or prosecutors" or his own attorney; and "the possibility of rehabilitation."  Miller, supra, 567 U.S. at ___, 132 S. Ct. at 2468, 183 L. Ed. 2d at 423.  The sentencing judge should also "view defendant as he stands before the court" at resentencing and consider any rehabilitative efforts since his original sentence.  State v. Randolph, 210 N.J. 330, 354 (2012).

As the trial court found, defendant Comer is entitled to the same type of resentencing hearing.

VII.

We reverse and remand Zuber's case and affirm and remand Comer's case.  Both defendants should be resentenced consistent with the principles outlined above.


JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.