**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0788-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GERARDO GOMEZ, a/k/a
KNUCKLES

    Defendant-Appellant.

_____

Submitted November 19, 2019 – Decided December 10, 2019

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 08-09-2688.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew P. Slowinski, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant was convicted in 2012 of murder, armed robbery, conspiracy to commit murder, attempted murder, and other offenses for his participation – along with five others – in the events on a Newark playground on the evening of August 4, 2007, that left three dead and only one survivor. Defendant was sentenced to an aggregate prison term of 195 years. The evidence on which he was convicted was briefly outlined in our opinion disposing of defendant's direct appeal, State v. Gomez, No. A-3093-13 (App. Div. Feb. 1, 2016),[1] as well as other unpublished opinions disposing of the appeals of co-defendants, and need not be repeated here.

The judge who presided over the lengthy trial also ruled on defendant's post-conviction relief (PCR) petition. After conducting an evidentiary hearing at which only defendant's trial attorney testified, Judge Michael L. Ravin rendered a thorough and well-reasoned written decision that denied defendant's request for post-conviction relief in all respects.

---

[1] In his direct appeal, defendant complained of the admission of N.J.R.E. 404(b) evidence and evidence that the surviving victim was sexually assaulted. He also complained he was denied the effective assistance of counsel because of the admission of the sexual assault evidence. Defendant also argued the sentence was excessive – but without asserting Miller v. Alabama, 561 U.S. 460 (2012) – even though defendant was fifteen years old at the time of his crimes. He lastly argued in the direct appeal that the judge misapplied State v. Yarbough, 100 N.J. 627 (1985), in imposing consecutive prison terms. We rejected all these arguments.

2

Defendant appeals the denial of his PCR petition, arguing he was denied the effective assistance of counsel guaranteed by the Sixth Amendment because his trial attorney: (1) asserted in his opening statement that defendant would testify but later did not call defendant to testify without explanation; (2) failed to adequately advise defendant about the decision not to testify; (3) failed to adequately advise defendant about a plea offer; (4) failed to cross-examine the surviving victim; (5) failed to adequately cross-examine co-defendant Baskerville, who implicated defendant; and (6) failed to request a jury instruction on the defense of duress. He also argues that appellate counsel was ineffective in: (7) failing to argue prosecutorial misconduct in the direct appeal. Defendant's last point in his appeal brief appears to only observe – without seeking relief from us – that: (8) he has yet to argue his aggregate sentence violates Miller or State v. Zuber, 227 N.J. 422 (2017).[2]

---

[2] As to this eighth point, defendant argues that the constitutionality of his sentence in light of Miller and Zuber "require[s] an in-depth examination of his circumstances both before and after the date of the offenses in this case," that this argument may be raised at any time because it challenges the legality of the sentence, and that the PCR judge stated he would address such an application on the merits once it was brought. Because defendant seeks nothing from this court regarding this eighth point, we express no view on the accuracy of what defendant asserts.

A-0788-17T4

After close examination of the record in light of the issues presented, we find insufficient merit in defendant's first seven arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(2), and affirm the order denying the PCR petition substantially for the reasons expressed by Judge Ravin in his thorough and well-reasoned written opinion. We offer only the following additional comments on defendant's first, fourth, fifth and sixth arguments.

To understand why defendant's arguments on these four points are without merit, we should consider defendant's trial strategy, which was to acknowledge defendant's presence in the Mount Vernon Elementary School playground when the murders and other crimes occurred but to also persuade the jury that defendant was only a bystander, not a participant. This position was not jeopardized by the surviving victim's testimony, because she was unable to say whether defendant was present or was a participant. Baskerville's involvement at defendant's trial was of concern because he implicated defendant, but the defense strategy was to discredit him because his testimony was motivated by revenge. Baskerville initially gave a statement to police that defendant was a mere bystander, but he changed his tune when police told him he and others were arrested because of a statement defendant gave to the police. Baskerville sent defendant a letter vowing revenge and claiming he would lie or do whatever

A-0788-17T4

it would take to get back at defendant. In bolstering the position that defendant was only a bystander, the defense's goal was to shake Baskerville's credibility, chiefly through use of this letter.

So, defendant's first argument in this appeal should be understood in light of the defense strategy. In support of that argument, defendant alludes to his attorney's statement in his opening, in which he told the jury that:

> You're going to hear Gerardo. He lives there in the projects across from the Mount Vernon School . . . . He lives in a household with his baby brother and baby sister . . . . You'll hear when he was even younger, 14, in the woods not far from that schoolyard, he got to stand in a circle while adults beat him. They beat him. They beat him.

Defendant argued in the trial court that this approach was "inconsistent, illogical and ineffective trial strategy" in light of the fact that he never testified. But, as the judge found, and we agree, the advice counsel later gave – that defendant not testify – was sound because to put defendant on the stand would have "opened him up to cross-examination by an experienced [a]ssistant [p]rosecutor and risked weakening his claim that he was a bystander." In some ways – even though the representation that defendant would testify was not kept – defense counsel was able as the judge found, through the statement now criticized, to "humanize" defendant for the jury. Although the defense was put in an awkward

A-0788-17T4

position of going back on its representation that defendant would testify, we agree with the judge that this circumstance could not have had a prejudicial impact on the defense.

Defendant's fourth argument – that his attorney failed to ask any question of the surviving victim on cross-examination – is, again, best understood in light of the defense strategy of showing defendant to be only a bystander. Viewed out of context, it may sound like a terrible mistake for an attorney to decline to cross-examine the crime victim. But, putting the issue in context, the attorney was making the choice of either cross-examining a sympathetic witness, who had not been able to say that defendant was a participant, at the risk of offending the jury, or leaving well enough alone because the victim's testimony did not implicate defendant.

Defendant's trial attorney testified at the PCR hearing that he had attended the trials of other co-defendants and was able to observe the victim during cross-examination, so he did not make this choice blindfolded. The victim was, according to the attorney, "disabled physically, mentally and emotionally" and was "the most sympathetic surviving victim" he had seen in his decades of practicing law in this arena. In addition, as the attorney explained:

[the victim] was not a reliable relator, her memory was not good. And as she didn't identify my client, I thought it best to do the humane thing.

. . . .

I guess I could have spent a great deal of time with [the victim] to try and cross[-]examine her on collateral matters, play numbers games with her about how many people she could see really when her face was down in the ground or after she was shot.

[I] [c]ould have asked her about whether she'd been drinking or smoking with her friends. . . . But I didn't want to squander for a moment any credit that I would have to be able to stand up at the end of the case and persuade the jury to listen to me and to follow me.

There was nothing to be gained in my opinion by beating up [the] poor [victim] any further than she already had been beat up.

. . . I had consulted with trial lawyers I've come to know through the years here in Essex County, people whose opinions I respect, and I think we were unanimous in the . . . conclusion that we should let her be.

. . . There was nothing to be gained in my professional opinion by cross[-]examining a witness who doesn't identify my client, who was no longer able to recall and relate, recollect details in a way that did much damage to . . . our defense.

. . . [I]t was hard to forget the way she presented. A grown woman, more child-like than adult, so sympathetic, had been through so much and lost so

7

much, that it was again, it was not an easy decision to make, sir. But one that I made after a great forethought.

Based on this testimony he found credible, Judge Ravin concluded that the attorney's decision not to cross-examine the surviving victim was reasonable.

The fifth argument concerns the effectiveness of the attorney's cross-examination of Baskerville. Again, the attorney's approach was the product of considerable thought and carried out in a manner consistent with the attorney's sound strategy, which meant to emphasize Baskerville's initial statement that defendant was a bystander and to discredit all that followed because of Baskerville's desire to seek revenge. The attorney explained his strategy in his PCR testimony by pointing out that once Baskerville:

> was informed that he was arrested because [defendant] had told on him[,] [he] posted a letter to [defendant] and swore everlasting revenge, that he would do whatever he could to get him. And we were in a very unusual and fortunate position to have that proof that [the] witness not only was going to lie, but promised that he was going to lie, that he was going to do anything he could. And if I recall, the letter was blown up as a demonstrative exhibit. And that promise that he would lie and do anything necessary went to his bias.

That bias, "coupled with the fact that [Baskerville] didn't want to spend the rest of his life in State Prison was fertile ground to argue [to the jury] that . . . Baskerville shouldn't be believed in the least[.]"

A-0788-17T4

As Judge Ravin observed in his written opinion, there was no deficiency in the attorney's strategy or his cross-examination of Baskerville.  Indeed, as the judge observed, the attorney's approach "was successful at least with regard to [Baskerville's] testimony that [defendant] held a gun to [the surviving victim's] head, pulled the trigger and the gun misfired" because defendant "was found not guilty of the weapons charges."

For these and the other reasons recounted in the judge's comprehensive opinion, we reject defendant's fifth argument.

As for defendant's sixth and last argument we will further discuss – that his trial attorney should have sought a jury instruction on the defense of duress – we again observe that such an approach would contradict the defense's position that defendant was merely a bystander.  To argue duress would essentially suggest to the jury that defendant "engaged in" these heinous offenses "because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another" and a reasonable person could not resist. N.J.S.A. 2C:2-9(a).  In introducing evidence to support this contention, defendant would have been required to show that he "actually . . . believe[d] in and [was] frightened by the likelihood of the threatened harm[.]" State v. B.H., 183 N.J. 171, 192 (2005).  He would, in essence, be acknowledging his active

9

participation and then be put in the position of asking the jury to excuse that participation because he acted out of fear. This would, as the trial attorney testified, undercut or "dilute" the defense that he was a mere bystander.

Judge Ravin found the attorney's explanations credible and his approach reasonably sound in not seeking instructions on the defense of duress. We agree. With the benefit of hindsight, defendant argues that the attorney should have pursued a duress defense. There is no reason to believe that would have generated a different result. But it seems clear that the better course was that taken. There was no way in which both strategies could be pursued at the same time. The attorney could not attempt to persuade the jury that defendant was a bystander as these crimes occurred while at the same time attempt to persuade the jury that he participated but under duress. The choice that was made constituted a reasonably sound strategy that courts should not second-guess. See State v. Chew, 179 N.J. 186, 206-13 (2004).

For these reasons, as well as for the reasons provided by Judge Ravin in his written decision, we reject all defendant's ineffectiveness arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0788-17T4