**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5261-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BOMANI P. KUBWEZA,
a/k/a JOHNNIE PRESTON,
TRAVIS LOVETTE, and
JO-JO MALIK,

     Defendant-Appellant.

_____

Argued October 13, 2020 – Decided November 5, 2020

Before Judges Sabatino, Currier, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 86-11-3944.

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex

County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

PER CURIAM

This is another appeal that contends a long-term adult prison sentence imposed on a juvenile offender violates the Eighth Amendment of the United States Constitution. As such, the appeal implicates a series of Eighth Amendment precedents on this subject issued in recent years by the United States Supreme Court, including Miller v. Alabama, 567 U.S. 460 (2012), as well as the New Jersey Supreme Court's opinion in State v. Zuber, 227 N.J. 422 (2017), applying those constitutional principles.

Defendant committed felony murder as a seventeen-year-old juvenile in 1985 and then murdered a second victim as an adult in 1986. The respective sentencing judges in the two cases imposed consecutive prison terms that resulted in an aggregate parole ineligibility period of sixty years.

Defendant, who has already completed one of the thirty-year parole bars, filed a motion to correct an allegedly illegal sentence. He sought to make the consecutive prison terms concurrent. He argued his lengthy combined sentence is the functional equivalent of life without parole and thus violates the Eighth Amendment under Miller and Zuber.

A-5261-17T4

Although the motion judge expressed misgivings about the severity of the aggregate sixty-year period, he concluded the law requires the two sentences to remain consecutive. Defendant now appeals that decision.

For the reasons that follow, we remand for further resentencing because the motion judge incorrectly presumed he had no legal or constitutional authority to modify defendant's aggregate sentence in a manner that would reduce the sixty-year combined parole bar. On remand, the court should follow the Supreme Court's constitutional mandate in Zuber to apply a "heightened level of care," 227 N.J. at 449-50, when imposing lengthy consecutive sentences on juvenile offenders who have committed multiple offenses.

I.

In January 1985, defendant Bomani Kubweza (known at the time as Johnnie Preston), who was then age seventeen, robbed and killed Carl Davis. The following year in April 1986, defendant, who was by that point an eighteen-year-old adult, took part in a robbery and felony murder of a different victim, Luis Martinez.

The police learned about defendant's commission as a juvenile of the earlier killing of Davis in the course of investigating the Martinez homicide. The court waived defendant to be prosecuted in the adult court for the Davis homicide. The two cases were tried before different juries, with the Martinez (adult offense) case going first.

The first jury convicted defendant of all charges in the Martinez case. In February 1987, Judge Joseph A. Falcone imposed on defendant for the felony murder a thirty-year mandatory minimum sentence with a mandatory thirty-year parole disqualifier pursuant to N.J.S.A. 2C:11-3(b), plus a concurrent sentence on weapons charges. The other counts merged. The convictions and sentences for these adult offenses were upheld on direct appeal and the Supreme Court denied certification. State v. Preston, No. A-3687-86 (App. Div. Feb. 24, 1989), certif. denied, 117 N.J. 142 (1989). Three ensuing petitions for postconviction relief were unsuccessful.

The second jury found defendant guilty of the murder of Davis and other charges stemming from the 1985 offenses he had committed as a juvenile. In May 1987, Judge John J. Dios sentenced him to a life term for the murder, with a mandatory thirty-year parole disqualifier. Judge Dios made that thirty-year sentence consecutive to the thirty-year sentence that defendant had received for

4

the adult 1986 offenses. All other counts merged. These convictions and sentences in the Davis matter were similarly upheld on direct appeal, and the Supreme Court denied certification. State v. Preston, No. A-5225-86 (App. Div. Dec. 22, 1988), certif. denied, 114 N.J. 515 (1989).

While in prison for the past three decades, defendant has had a mixed disciplinary record, most notably several assault and drug infractions. Most recently, he had infractions in 2014 for security threat group involvement and assault, and in 2017 an infraction for fighting. Defendant has been housed in a higher-security management control unit. On the other hand, defendant has completed several courses and programs in prison and earned his GED. He has a son in Florida who is willing to provide him with a home if he were released, as well as other supportive relatives.

Following Miller v. Alabama and other opinions recognizing that the Eighth Amendment can prohibit very lengthy prison terms imposed on juvenile offenders that are the practical equivalent of life without parole ("LWOP"), defendant moved in December 2016 to reduce his sixty-year aggregate term, arguing it is unconstitutional.

Before his motion was heard, the New Jersey Supreme Court in 2017 issued its opinion in Zuber, applying the "Miller youth factors" to a defendant who had a fifty-five-year parole disqualifier. 227 N.J. at 445-48. A key facet of Zuber instructs our courts to apply "a heightened level of care" when imposing consecutive sentences on juvenile offenders who have been waived to adult court. Id. at 450. In particular, Zuber instructs that courts must bear in mind the Miller youth factors and the "real-time consequences" when applying upon such juveniles the customary analysis under State v. Yarbough, 100 N.J. 627, 643-44 (1985), which normally guides whether prison terms for separate offenses should be consecutive or concurrent. Zuber, 227 N.J. at 447, 450.

Defendant argued to the trial court that his sixty-year aggregate sentence violates Miller and Zuber. He requested the court to make his sentence for the 1985 juvenile crimes concurrent with the sentence on the 1986 adult crimes, which he has already completed. The State opposed any decrease in the aggregate sixty-year custodial term, arguing the combined sentence was appropriate given the two separate incidents. In the alternative, if changed at all, the State advocated for an aggregate sentence with a forty-five-year parole bar.

The motion judge[1] recognized defendant's rehabilitative efforts in prison, which justified some modification of his sentence. The judge reduced the life term for the 1985 murder to a thirty-year sentence with a thirty-year parole disqualifier. The judge expressed a desire to drop the sentence even further by downgrading the 1985 conviction and imposing a consecutive twenty-year sentence with a ten-year parole disqualifier, but he believed he was constrained by state law from doing so. The judge also observed that he was prevented by Yarbough's principle of "no free crimes" from making the sentences for the two murders concurrent.

As a result of these developments, defendant presently has an aggregate parole ineligibility period of sixty years for the two homicides. That means he will not be eligible for parole until he is nearly the age of eighty.

Defendant now presents the following arguments in his brief:

> POINT ONE
>
> THE 60-YEAR PAROLE DISQUALIFER IMPOSED UPON DEFENDANT AT HIS RESENTENCING, WHICH WILL KEEP HIM INCARCERATED UNTIL JUST BEFORE HIS 80TH BIRTHDAY, VIOLATES OUR SUPREME COURT'S RULING IN STATE v. ZUBER THAT JUVENILE OFFENDERS WHO ARE SERVING "THE PRACTICAL EQUIVALENT OF LIFE WITHOUT PAROLE" MUST BE GIVEN A

---

[1] Both of the original sentencing judges are now deceased.

A-5261-17T4

MEANINGFUL OPPORTUNITY FOR RELEASE WITHIN THEIR LIFETIME. THE ERROR WAS COMPOUNDED BECAUSE THE JUDGE, WHO REPEATEDLY STATED THAT HE WANTED TO IMPOSE A LESSER TERM, MISUNDERSTOOD HIS SENTENCING OPTIONS AND INCORRECTLY BELIEVED THAT HE WAS REQUIRED TO IMPOSE [A] CONSECUTIVE SENTENCE.

A. The Governing Law

B. The Judge erred in holding that he was required to impose consecutive sentences for the two murders.

C. The Judge erred in imposing a sentence which was the practical equivalent of life without parole.

D. The Judge ignored alternate sentences which could have satisfied his stated goal of imposing additional punishment for this offense while still giving defendant a meaningful opportunity for future release.

The State opposes these arguments, arguing that the motion judge abided by constitutional principles in maintaining the aggregate sixty-year parole ineligibility period for the two separate murders. The State contends the judge did not abuse his discretion at the resentencing, and that defendant's completion of the second consecutive parole bar remains justified. The State has not cross-appealed, however, the motion judge's modification of that sentence from a life term to a mandatory thirty-year sentence.

At the time defendant was originally sentenced for the 1985 and 1986 murders, the lengthy combined period of parole ineligibility imposed on him in those two cases was both constitutional and consistent with New Jersey law. Our successive appellate opinions repeatedly upheld the sentences' validity, both on direct appeal and in upholding the denial of postconviction relief.

Miller and Zuber

The analytic framework thereafter changed after the United States Supreme Court issued a series of opinions, including Miller, which recognized it can be cruel and unusual punishment to impose an LWOP sentence upon a juvenile offender without affording him a prospect for demonstrating his ability to rehabilitate himself.

More specifically, the Supreme Court in Miller prescribed that sentencing courts must bear in mind several constitutional considerations when considering whether to impose an LWOP sentence upon a juvenile offender who has been tried and convicted as an adult. Those considerations, which have come to be known as the "Miller factors," encompass five subjects. Specifically, mandatory life without parole for a juvenile, or its functional equivalent, unconstitutionally:

> [1] precludes consideration of [a defendant's] chronological age and its hallmark features — among

them, immaturity, impetuosity, and failure to appreciate risks and consequences.

[2] It prevents taking into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional.

[3] It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.

[4] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

[5] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

[Zuber, 227 N.J. at 445 (quoting Miller, 567 U.S. at 477-78).]

These constitutional factors apply retroactively to juvenile offenders such as Kubweza who received lengthy adult sentences before the United States Supreme Court issued its Miller opinion in 2012. Montgomery v. Louisiana, 577 U.S. ——, 136 S.Ct. 718, 732 (2016); Zuber, 227 N.J. at 446.

Thereafter, our Supreme Court in Zuber incorporated the Miller constitutional analysis into New Jersey sentencing principles. The Court in

Zuber held that when a juvenile tried as an adult is subject to a lengthy aggregate term for one or multiple offenses that results in "the practical equivalent of life without parole," the sentencing court must also consider the five factors set forth in Miller. Zuber, 227 N.J. at 429, 445-47.

Zuber did not define a de facto life term with any specific number of years. However, it instructed sentencing courts to consider the "real-time consequences of the aggregate sentence." Id. at 447. The Court held that the aggregate terms in the Zuber case -- 110 years with a fifty-five-year parole bar and seventy-five years with a sixty-eight-year parole bar -- were the functional equivalent of life terms. Id. at 449. Like defendant Kubweza in this case, those aggregate terms included consecutive punishments for multiple crimes committed at different times. Id. at 431-33. [2]

The Court in Zuber recognized that consecutive terms "often drive[] the

_____

[2] We recognize that, unlike the crimes at issue in Zuber, defendant in this case did not commit all of his crimes as a juvenile. We do not believe that this fact takes his sentence outside the reach of Zuber, however, because the sentence imposed on the murder committed as a juvenile (i.e., a consecutive term of life with a thirty-year minimum) is the sentence that rendered his aggregate term a de facto life sentence. As the motion judge recognized, had his sentences been reversed (i.e., had Kubweza been sentenced first on the juvenile crime to thirty years without parole and then sentenced on the adult crime to a consecutive term of life with a thirty-year parole bar), it is unclear whether Zuber would afford him any relief.

real-time outcome at sentencing." Id. at 449. Accordingly, the Court instructed sentencing courts to consider the traditional Yarbough guidelines under "a heightened level of care" when deciding to impose consecutive terms upon a juvenile offender for crimes committed during one incident and for multiple crimes committed at different times. Id. at 449-50. The Court in Zuber did not discuss in detail what it meant by a "heightened level of care." It couched that directive in terms of the "concerns that Graham[3] and Miller highlight" in the opinion of the United States Supreme Court and the "overriding importance" of Miller. Id. at 450.

Ordinary Consecutive/Concurrent Analysis Under Yarbough

In ordinary contexts not affected by these constitutional principles involving juvenile offenders, New Jersey sentencing judges generally apply the guidelines of State v. Yarbough when deciding whether to make sentences consecutive or concurrent.

The Yarbough guidelines provide:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

---

[3] Graham v. Florida, 560 U.S. 48 (2010).

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[Yarbough, 100 N.J. at 643-44.]

Guideline number six has been superseded by a 1993 amendment to N.J.S.A. 2C:44-5(a), which provides that there "shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses."

Like the United States Supreme Court in Miller, our Supreme Court in Zuber did not entirely preclude the possibility of an LWOP sentence for a juvenile. Instead, it instructed that few juveniles should receive de facto life terms because "it is only the 'rare juvenile offender whose crime reflects irreparable corruption.'" Id. at 451 (quoting Miller, 567 U.S. at 479-80).

The Court in Zuber invited the Legislature to consider enacting legislation to provide for review of a sentence after a certain number of years to address the potential constitutional infirmity that may arise when facts emerging after the juvenile's original sentencing hearing establish reform and rehabilitation before expiration of the parole bar. Id. at 451-52. While the Legislature has considered the matter, it has not to date enacted any such new law.

The Resentencing in This Case

At the resentencing hearing in this case, defense counsel addressed the Miller factors by first arguing that the crime was not the type that reflected irreparable corruption. Prior to the 1985 robbery and stabbing, defendant and three youths—co-defendants Derrick Notis, Quincy Spruell, and Shawn

Cummings--were at a party where defendant consumed alcohol and "may have been drunk." After the party, "[t]hey came upon the victim and Spruell began to fight with the victim while the other [youths] went through the man's pockets." At some point, Cummings gave defendant a knife, and defendant "stabbed the victim one time," causing his death. Counsel argued that nothing about those facts suggested that the crime was planned.

Defense counsel further emphasized that police had no suspects for "quite a while" and made arrests only because defendant brought up the crime and confessed to it after he had confessed to the April 1986 robbery and murder. Had it not been for his voluntary confession, "this [1985] crime may never have been solved."

With respect to defendant's family life, his counsel noted that before he was born, his maternal grandfather had shot and killed his father. "[A]t no point in his childhood did [defendant] ever have a father figure." His mother, now deceased, had five children by four different men, none of whom had lived with the family. His mother's brothers were alcoholics and drug addicts, and he grew

up without adult supervision. At age fifteen, he fathered a son and a year later he fathered a daughter.[4]

Counsel emphasized to the motion judge that even though defendant had entered prison with no hope of release until he was close to eighty years of age, he nonetheless had taken steps to rehabilitate himself. Defendant has completed a number of classes, including anger management classes, and earned a GED. Then, after the Miller decision was issued, defendant "took, basically, everything that he could possibly take in terms of institutional programs."

On the other hand, defendant's prison record has not been consistently exemplary. In 1990 and 1998, he incurred infractions for assault against prison staff, one of which resulted in a twenty-month sentence with a nine-month parole bar. However, counsel asserted that defendant had only pushed the staff member and had not seriously injured him. Defendant had also "spent a whole lot of time in the management control unit" [MCU], or high security unit, and, in 2015, had been cited for possession of alcohol, which defendant had disputed.

Despite spending thirty-one years in prison, the record suggests defendant has managed to maintain family connections, and many of his family members

---

[4] In his brief, defendant represents that at age eighteen he fathered a third child who was struck and killed by a car at age two.

"were very supportive." His son lives in Florida and had offered his home to defendant. His son believed that he could secure employment for defendant upon release. Defendant's step-brother had also provided information on an employer who had agreed to speak with defendant.

Defendant's thirty-four-year-old daughter spoke on his behalf and requested his release. She said that defendant was not the same person he was when he was age seventeen, and she urged the court to impose a sentence that would allow him to have a life with her and her three children. She underscored that defendant's co-defendants were no longer in prison and were able to spend time with their families while defendant was still incarcerated. The daughter also expressed concern for defendant's health, as he was fifty years old and had suffered a stroke, which had left him with a limp.

Defendant's sister also spoke at the resentencing hearing. She said that until defendant went to prison when she was eight years old, he had been the only father figure she had known. Her other siblings had relocated to Florida, and she remained in New Jersey because she wanted to be close to defendant, in the event he had the chance at release.

Defendant spoke on his own behalf, apologizing to the 1985 victim's family. He claimed he had been influenced by older boys who did not have his

best interests in mind. He said he had no positive male role model when he was a child and that his family was dysfunctional, as his attorney had explained. He thanked the mother of his son for raising that child without a father to help, and he asked the court for the opportunity to help raise his grandchildren. If released, defendant planned to further his education, obtain employment, and work with juveniles to help prevent them from making the same mistakes he had made.

Given these circumstances, defense counsel urged the motion judge to reduce defendant's life sentence to a term of thirty-five to forty-five years, and to run it concurrently with the thirty-year sentence for the April 1986 crimes. Such a modification allegedly would "allow the Parole Board to maintain control over him, at least for the foreseeable future," while giving him the ability to have some meaningful time outside of prison.

In response, the State argued that the Miller factors did not weigh in favor of a change in sentence. The State emphasized that defendant was only four months away from turning eighteen when he committed this robbery and murder, and he committed the second murder and robbery at age eighteen. The State disputed that defendant was influenced by older males, underscoring that his co-defendants were eighteen or nineteen years old, and thus were not

18

significantly older, and that nothing in the record suggested they had overborn his will. The State argued that defendant was a willing participant in the crimes, which, according to the jury's verdict, included purposeful and premeditated murder. With respect to defendant's home life, the State stressed that many young males grow up in dysfunctional homes but do not commit crimes, let alone murder.

On the whole, the State asserted that defendant was not fit to return to society. For most of his prison term, defendant was housed in the MCU because he had an "extensive history of violent behavior." The State listed the numerous infractions that defendant had incurred. They include, among other things, two separate assaults in 1988 and 1989, possession of a weapon in 1994, multiple instances of possession of drug paraphernalia through 2014, theft, participation in a security threat group in 2010, and, most recently, fighting in July 2017. According to the State, these infractions showed that defendant is violent, dangerous, and not prepared to rejoin society.

With respect to the Yarbough guidelines, the State argued that they weighed in favor of a consecutive term because defendant committed two murders on separate days. The State urged the court to make no change to the life sentence. However, the State suggested, in the alternative, that the court

impose a term of life imprisonment with a forty-five-year parole bar, to be served concurrently with the thirty-year sentence he received for the April 1986 crimes. That modification would allow him the possibility of parole after approximately twelve more years of imprisonment.

Defense counsel responded that the State's proposed alternative sentence of life with a forty-five-year parole bar would be an illegal sentence because it would increase the original parole bar on the 1985 murder by fifteen years. The court seemed to agree that it could not lawfully increase the parole bar, although there was little discussion of this issue.

The Motion Judge's Decision

After reflecting upon these arguments, the motion judge made several pertinent findings. The court found that while defendant came from a dysfunctional family and had a troubling childhood, there was no basis to find that his childhood was any worse than others within his community. It rejected the notion that he was influenced by older men since his co-defendants were only one-to-two years older than him.

The court said that it "struggled with" whether defendant had shown sufficient rehabilitation because he had incurred numerous infractions and had spent lengthy periods of time in the MCU. However, upon entering prison, at a

20

time when he had nearly no hope of release, he took "numerous classes" to better himself and earned a GED. The court listed more than twenty certificates earned and programs completed by defendant in prison through 2017.

The court described completion of these courses as "significant accomplishments" and noted that at the resentencing hearing, defendant's family members had "spoke[n] passionately on his behalf." Also, defendant apologized to the victim's family and said that he had been influenced by others and expressed a desire to work with youth if released.

Despite defendant's positive steps, the court declined to find that defendant had been "fully rehabilitated." The court compared him to Ricky Zuber and said the only negative behavior Zuber had exhibited during his lengthy prison term was a minor theft incident. Defendant, by comparison, had a long list of infractions.

The court did not make findings on the aggravating and mitigating sentencing factors, but apparently accepted those factors found by the original sentencing courts.

With respect to the Yarbough guidelines, the trial court found they weighed in favor of consecutive terms because the crimes occurred at different times, involved separate victims, and had objectives that were independent of

each other. For this reason, the court said it had "significant trouble" with defense counsel's request to impose a concurrent, rather than a consecutive, term. In the court's view, doing so would effectively impose no punishment for the January 1985 murder.

Even so, the court expressed the view that an aggregate sixty-year parole bar was not a just sentence in this case. The court mused in this regard, "If I could sentence the Defendant one degree lower to an aggravated manslaughter, as indicated in" N.J.S.A. 2C:44-1(f)(2), "I would sentence the [d]efendant to [twenty] years with ten years of parole ineligibility" to run consecutively to the sentence for the April 1986 crimes. This would make defendant eligible for parole after forty years of imprisonment when he would be age fifty-eight. However, the court said it did not have the authority to impose that type of modified sentence. Instead, the court reduced defendant's life sentence to thirty years' imprisonment without the possibility of parole, and ordered that sentence to run consecutively to the sentence for the April 1986 murder. Thus, defendant's aggregate sixty-year parole bar did not change.

### III.

On appeal, defendant contends that the resentencing court erroneously concluded it was required by law to impose consecutive terms. He argues that

although the court could not increase the parole bar on his conviction for the January 1985 murder -- because doing so would render the sentence "illegal" -- the court could have imposed a concurrent term that would require him to serve some additional time while significantly reducing his aggregate term. He emphasizes that the trial court wanted to impose a consecutive term of twenty years' imprisonment with a ten-year parole bar, but felt it was not authorized to do so by any statute.

Analysis

Having considered these arguments and the State's responding points, we conclude this matter should be remanded for resentencing. We do so because, despite its detailed discussion of the record, the trial court did not apply the Yarbough guidelines with a "heightened level of care," as required by Zuber.

First, the trial court correctly found – as the State concedes – that the sixty-year aggregate period of parole ineligibility amounts to the functional equivalent of life without parole, i.e., an LWOP sentence. The aggregate term is five years longer than the fifty-five-year parole ineligibility period the Supreme Court deemed to be an LWOP sentence in Zuber. Accordingly, the Eighth Amendment limitations set forth in Miller and Zuber apply here. Such a sixty-year period

without parole is not constitutional, unless the record shows defendant has no prospect for rehabilitation.

On the subject of rehabilitation, the trial court reasonably found that defendant's prison record over the past three decades is mixed. As noted, defendant has obtained a GED and completed over twenty programs. On the other hand, he has committed multiple disciplinary infractions, some of them quite serious, up through as recently as 2017. Assessing this prison record on the whole, however, the judge found that defendant was not categorically unable to be rehabilitated.

The motion judge expressly found that defendant's sixty-year mandated period without parole eligibility was "not just." However, the judge felt that he was compelled under state law principles, especially Yarbough, to maintain the consecutive structure of the two sentences, under the "no free crimes" principle.

With all due respect to the motion judge's candor and conscientiousness, it appears the judge did not fully appreciate his constitutional authority to reduce defendant's sentence in a manner that comports with the Eighth Amendment, regardless of customary non-constitutional principles under Yarbough. The Supreme Court in Zuber instructed that the Yarbough factors should not be applied in a conventional way to juvenile offenders. Rather, a "heightened level

of care" is required. Such "heightened level of care" was not applied here. In other words, the judge's hands were not tied as much as he thought, because ultimately the sentence imposed must be a constitutional one.

We disagree with the State that our scope of review is confined to whether the motion judge abused his discretion, and thus we must defer to the judge's decision. Such deference is not required where, as here, a conventional application of sentencing principles leads to an unconstitutional outcome.

More specifically, we conclude the judge has the prerogative in this case to impose concurrent, rather than consecutive, sentences in order to comply with the Eighth Amendment under the principles of Miller and Zuber, even though consecutive sentences otherwise could be called for under Yarbough. The matter must be remanded for such a second look.

This leads us to consider the question of parole ineligibility under the murder statute, N.J.S.A. 2C:11-3, that existed at the time of defendant's 1985 murder. It is clear that a court could not increase the parole bar under that statute beyond thirty years. State v. Scales, 231 N.J. Super. 336, 339-40 (App. Div.), certif. denied, 117 N.J. 123 (1989), is directly on point and so holds. Accord State v. Carroll, 242 N.J. Super. 549, 566 (App. Div. 1990), certif. denied, 127 N.J. 326 (1991).

25

Even so, this statutory limitation in former N.J.S.A. 2C:11-3 can potentially yield to a higher mandate of the Constitution. In particular, the trial court has the ability to fashion a new sentence for the 1985 murder -- including a higher parole ineligibility period than thirty years -- in order to achieve a constitutional outcome. The resentencing court is not confined in a straitjacket in fashioning a constitutional remedy. State law must yield to the Constitution in this unusual situation. When the application of a state statute would otherwise produce an unconstitutional result, "we proceed under 'the assumption that the legislature intended to act in a constitutional manner.'" State v. Burkert, 231 N.J. 257, 277 (2017) (quoting State v. Johnson, 166 N.J. 523, 540-41 (2001)).

On multiple occasions, the United States Supreme Court has authorized deviations from the rigidities of state sentencing statutes, when doing so is constitutionally necessary under the Eighth Amendment to provide relief from lengthy prison terms that have been imposed on certain juveniles. See, e.g., Montgomery, 577 U.S. ——, 136 S.Ct. at 736 (holding as unconstitutional a mandatory LWOP statute when applied to certain juvenile offenders); Miller, 567 U.S. at 465, 479 (same); Graham, 560 U.S. at 69-70, 75 (same). Above all, the sentence must be "just."

26

We discern no impediment under the Double Jeopardy Clause to raising the parole ineligibility period on a hypothetical concurrent murder sentence imposed on defendant, so long as the aggregate sixty-year period is not exceeded. Where a defendant successfully challenges his sentence or conviction on appeal, a court may restructure the sentence on remand without offending Double Jeopardy protections, so long as the aggregate sentence does not exceed the original aggregate. See, e.g., State v. Rodriguez, 97 N.J. 263, 277 (1984) (finding that defendant's Double Jeopardy protections were not violated where he successfully raised a merger issue on appeal and on remand the court imposed the same aggregate term by increasing the sentence for one offense); State v. Kosch, 458 N.J. Super. 344, 352 (App. Div.) (finding that defendant's right against Double Jeopardy was not violated where, after defendant successfully appealed three of his nine convictions, the court imposed the same aggregate term by changing one sentence to an extended term), certif. denied, 240 N.J. 20 (2019).

By analogous examples, our case law is clear that a court may increase a sentence on a specific crime by changing an ordinary term to an extended term, by increasing a parole bar, and by changing a concurrent term to a consecutive term, so long as the aggregate term imposed does not exceed the original

aggregate term. See State v. Young, 379 N.J. Super. 498, 502 (App. Div. 2005) (finding no Double Jeopardy infirmity where the defendant--originally convicted of burglary and third-degree aggravated assault--successfully challenged his burglary conviction on appeal and was resentenced to the same aggregate term based on imposition of a discretionary persistent offender sentence with an increased parole bar for the assault conviction).

Specifically, we find that the trial court could have imposed the aggregate sentence it apparently wished to impose as a constitutional remedy to avoid an Eighth Amendment violation, by imposing a concurrent term of fifty years with a forty-year parole bar for the January 1985 murder. Such a sentence would not have violated the Double Jeopardy Clause because the aggregate term of fifty years would be less than the original aggregate term of life with a sixty-year parole bar. The sentence would also address the court's concern that defendant not be given a "free crime" because it would require defendant to serve additional time for the January 1985 murder, beyond the thirty-year term required for the April 1986 murder. Additionally, it would comply with Zuber's requirement that the court apply Yarbough with a "heightened" level of care, because it would impose an aggregate term that would not amount to a de facto life term. Similarly, the sentence would withstand scrutiny under Zuber because

defendant would be subjected to a forty-year parole bar, which would make him eligible for parole before age sixty.

The thirty-year cap on parole ineligibility in the former murder statute was created for the benefit of defendants. Here, this defendant is willing to waive the benefit in order to achieve a constitutional result that is to his overall advantage. We find no reason to disallow such an option.

That said, it is not our role to decide in advance exactly what sentence defendant should receive. The matter instead is remanded to provide the trial court with the opportunity to do so. At such a resentencing, the record should be updated to take into account any interim events – positive or negative – that may have transpired in the meantime. State v. Randolph, 210 N.J. 330, 349-51 (2012). The court also should conduct a fresh re-examination of the pertinent aggravating and mitigating factors and not be bound by the factors as analyzed at the original sentencings in 1987. Zuber, 227 N.J. at 453.[5]

---

[5] Although it is not part of this case, we note that a statute signed into law on October 19, 2020, A-4373/S-2592, implements the Sentencing Commission's recommendation and adds a criminal defendant's youth to the list of permissible mitigating factors a court may consider when sentencing. Under the new law, a sentencing court could now broadly consider as a mitigating factor whether a defendant was under the age of twenty-six when an offense was committed. We do not resolve here whether this new statute has any retroactive impact on this case, in which the two final judgments of conviction were issued over thirty years ago.

A-5261-17T4

All other points raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Reversed for resentencing in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5261-17T4