**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0382-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

IBRAHIM SULAIMANI,
a/k/a SIR WILLIAM JACKSON,

     Defendant-Appellant.

_____

Argued October 7, 2020 – Decided July 27, 2021

Before Judges Fuentes and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. 88-11-1273.

Kevin Walker, First Assistant Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin Walker, of counsel and on the briefs).

Jeffrey C. McElwee, Assistant Prosecutor, argued the cause for respondent (Angelo J. Onofri, Mercer County Prosecutor, attorney; Jeffrey C. McElwee, on the brief).

PER CURIAM

On March 3, 1988, fifteen-year-old defendant Ibrahim Sulaimani, a/k/a Sir William Jackson, was charged in the Chancery Division, Family Part with committing the following acts of delinquency that, if committed by an adult, would constitute murder, N.J.S.A, 2C:11-3, first degree robbery, N.J.S.A. 2C:15-l; second degree possession of a handgun for an unlawful purpose, N.J.S.A, 2C:39-4(a), third degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), fourth degree unlawful possession of a weapon (nunchaku sticks), N.J.S.A. 2C: 39-5(d),[1] and second degree burglary, N.J.S.A. 2C:18-2(b)(1).

On September 30, 1988, a Family Part judge conducted a hearing and granted the State's motion to transfer these juvenile delinquency charges to the Law Division, Criminal Part, pursuant to N.J.S.A. 2A:4A-26.[2] This allowed the State to prosecute defendant as an adult and, if convicted, sentence him to a term of imprisonment within the range permitted under Title 2C, notwithstanding his minority. On November 4, 1988, a Mercer County grand jury returned an indictment against defendant charging him with the same criminal offenses he

---

[1] Effective January 13, 2008, the Legislature made unlawful possession of a handgun a second degree offense.

[2] As our Supreme Court recently noted in State in Interest of N.H., "[o]ver the years, the Legislature has revised the waiver statute on a number of occasions." 226 N.J. 242, 249 (2016).

A-0382-18

faced in the Family Part, and added two counts of felony murder, N.J.S.A. 2C:11-3a(1); N.J.S.A. 2C:2-6.

Defendant pled not guilty and was tried before a jury over a period of ten consecutive days, commencing on April 24, 1990. The jury found defendant guilty of two counts of felony murder, first degree robbery, second degree burglary, and all of the weapons-related offenses, and acquitted him of purposeful, knowing murder. Defendant was eighteen years old at the time he appeared before the trial judge for sentencing on August 10, 1990. The trial judge sentenced defendant to an aggregate term of life imprisonment, with thirty years of parole ineligibility.

On direct appeal, this court affirmed defendant's conviction and sentence. State v. Jackson, No. A-676-90 (App. Div. Sept. 22, 1994), certif. denied, 140 N.J. 329 (1995). We incorporate by reference the underlying facts and evidence that led to defendant's conviction, as described in detail in the opinion of this court. Id., slip op. at 3 to 8.

On January 21, 1996, a Criminal Part judge, with no previous involvement with the case, denied defendant's first post-conviction relief (PCR) petition. In response to defendant's appeal, this court affirmed the PCR judge's order. State v. Muhammad, No. A-505-96 (App, Div. Jan. 21, 1999). Defendant filed a

second PCR petition, which was heard and denied by a different Criminal Part judge on August 14, 2008 and affirmed by this court on direct appeal. State v. Sulaimani, No. A-0591-08 (App. Div. July 15, 2009).

On November 1, 2017, defendant represented by counsel, filed a motion to correct an illegal sentence pursuant to Rule 3:21-10(b)(5). The matter first came for oral argument before Judge Robert C. Billmeier on February 16, 2018. As framed by Judge Billmeier, defendant "claims his sentence must be vacated because it is not in accordance" with the United States Supreme Court's holdings in Montgomery v. Louisiana, 577 U.S. ___, 136 S. Ct. 718 (2016), and Miller v. Alabama, 567 U.S. 460 (2012), as well as our Supreme Court's holding in State v. Zuber, 227 N.J. 422 (2017). Defendant had not yet completed serving the thirty-year minimum term of imprisonment at the time defendant's counsel argued the motion before Judge Billmeier:

> He was [fifteen] years old at the time. . . . [T]wo juries, separately, have determined that the adult co-defendant was the actual shooter. Mr. Sulaimani was actually acquitted of the knowing and purposeful [murder]. That's another Miller factor. His involvement in this tragic incident rests on the theory of felony murder, as opposed to Mr. Sulaimani actually committing the fatal act.
>
> He was very young at the time, very impetuous at the time. He obviously fell under the sway of an older co-defendant who influenced him. There . . . was a certain

A-0382-18

element of dysfunction, unfortunately, in the home. And he was the byproduct of that dysfunction.

The judge noted that the Supreme Court's holding in Montgomery v. Louisiana made clear that by "[a]llowing [juvenile] offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." 136 S. Ct. at 736. In response, defense counsel argued that despite defendant's exemplary disciplinary record as an inmate, the likelihood that he would be paroled after completing the minimum thirty-year term remained uncertain.

The prosecutor argued that based on our Supreme Court's holding in Zuber, the court must first apply the Miller factors[3] to determine whether a

---

[3] The United States Supreme Court in Miller held that a judge should consider the following five factors before sentencing a juvenile to a mandatory life sentence without parole: (1) the juvenile's chronological age; "hallmark features" such as "immaturity, impetuosity, and failure to appreciate risks and consequences;" (2) the juvenile's family and home environment, especially if it is dysfunctional and prevents the child from extricating him or herself; (3) the circumstances of the homicide offense, including the extent of the juvenile's participation, and whether there were familial or peer pressures that affected the child; (4) whether the juvenile could have been charged and convicted of a lesser offense if not for the incompetent nature associated with youth, such as an inability to interact with law enforcement agents, prosecutors, ability to meaningfully participate in plea agreement negotiations and/or an incapacity to

A-0382-18

thirty-year minimum term with the real possibility of parole thereafter is the functional equivalent of a life sentence.  In a prescient statement, the prosecutor then argued that if defendant "were to be paroled just a few short days from now, he would have a substantial portion of his life on the outside."  At the conclusion of the February 16, 2018 oral argument session, Judge Billmeier informed the attorneys he would issue a written decision.

As the prosecutor anticipated, on or about April 12, 2018, the Parole Board granted defendant's parole application effective May 24, 2018.  The fifteen-year-old boy who was detained and remanded to a juvenile detention center by a Family Part judge emerged from an adult prison facility thirty years later as a forty-five-year-old man.  In support of his motion, defendant submitted a supplemental brief arguing that requiring him to remain under the supervision of a parole officer for life directly impacted his liberty interest and cast the same unconstitutional shadow our Supreme Court just found unacceptable in State in Interest of C.K., 233 N.J. 44 (2018).

---

assist defense counsel; and (5) mandatory punishment that disregards the possibility of rehabilitation, even when the circumstances strongly suggest it. 567 U.S. at 477 (citations omitted).

In C.K., our Supreme Court held that the registration and community notification provisions of Megan's Law, N.J.S.A. 2C:7-1 to -11; N.J.S.A. 2C:7-2(g), imposed these obligations for life on juveniles adjudicated delinquent for committing certain sexual offenses. Under these circumstances, the lifetime requirements imposed on juveniles in N.J.S.A. 2C:7-2(g) violated the substantive due process guarantee of Article I, Paragraph 1 of the New Jersey Constitution. Id. at 48.

Writing for a unanimous Court in C.K., Justice Albin definitively stated:

> [N]o juvenile adjudicated delinquent will be released from his registration and notification requirements unless a Superior Court judge is persuaded that he has been offense-free and does not likely pose a societal risk after a fifteen-year look-back period.
>
> Defendant may apply for termination from the Megan's Law requirements fifteen years from the date of his juvenile adjudication, and be relieved of those requirements provided he meets the standards set forth in N.J.S.A. 2C:7-2(f).
>
> [Id. at 48-49.]

In light of the Court's holding in C.K., Judge Billmeier summoned the attorneys for a second round of oral argument held on July 13, 2018. In the course of his interactions with the attorneys, Judge Billmeier noted a particular

A-0382-18

feature of the Court's ruling in C.K. that defense counsel had not directly addressed:

> [T]he Supreme Court said . . . that [a] juvenile had to be on supervision for [fifteen] years before he can petition the Court to be released. <u>Your client, as I understand the regulations of parole, seven years after his release from this past May, can petition the Parole Board to be released from any parole requirements. And, in fact, for good cause, and given his track record, he may not even have to spend seven years on parole.</u>
>
> [(Emphasis added).]

At the conclusion of the second oral argument, Judge Billmeier once again apprised the attorneys that he would communicate his decision in a written opinion. In an order dated August 9, 2018, supported by a well-reasoned memorandum of opinion, Judge Billmeier denied defendant's motion to correct his alleged illegal sentence pursuant to Rule 3:21-10(b)(5).

Judge Billmeier began his analysis by noting that defendant's argument is rooted in the holdings of the United States Supreme Court's decisions in Miller and Montgomery, and our Supreme Court's decision in Zuber. Defendant argued that when these decisions are considered together, the central thesis of these cases renders his original life sentence with a thirty-year period of parole ineligibility "retroactively illegal and require[s] that he be resentenced." In his memorandum of opinion, Judge Billmeier acknowledged that although

8

defendant had been released from prison "he is subject to numerous parole conditions, including an inability to vote, restrictions on his ability to change addresses and travel, and the requirement to report to a parole officer as directed." He also recognized that if defendant had been sentenced after a proper consideration of the five Miller factors, "he would have been sentenced to thirty years' imprisonment with a thirty-year parole disqualifier, rather than life imprisonment with a thirty-year parole disqualifier."[4]

The Supreme Court revisited its holding in Miller four years later in Montgomery, a case in which the defendant was seventeen years old when he was sentenced to a term of life without parole for killing a deputy sheriff's officer in 1963. 136 S. Ct. at 725-26. The Court explained that Miller "announced a substantive rule of constitutional law" that applies retroactively. Id. at 734. It also explained that the retroactive application of Miller

> does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a Miller violation by permitting juvenile

---

[4] The Supreme Court in Miller held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479. However, the Court left the door ajar for imposition of a life sentence in a case in which a juvenile is convicted of homicide. In such cases, the judge must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 480.

A-0382-18

homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

[Id. at 736 (internal citation omitted).]

Judge Billmeier also relied on our Supreme Court's analysis in Zuber, where the Court outlined the five Miller factors and characterized them as "particularly instructive for judges sentencing juvenile offenders." 227 N.J. at 445.[5] After carefully analyzing the trilogy of cases discussed here, Judge Billmeier concluded that the approach adopted by the Supreme Court in Miller was not relevant here because defendant "was not subject to a sentencing scheme mandating life without parole."

Against this backdrop, defendant appeals raising the following arguments:

---

[5] The two defendants in Zuber committed serious, violent crimes before they reached the age of majority. The trial court sentenced one of the defendants to an aggregate term of 110 years' imprisonment. If left undisturbed, he would have been approximately seventy-two years old by that time he was eligible for parole. The trial court sentenced the other defendant to a term of seventy-five years. If left undisturbed, he would have been eighty-five years old by that time he was eligible for parole. 227 N.J. at 428-29.

POINT I

THE SENTENCE IMPOSED IN THIS CASE IS UNCONSTITUTIONAL BECAUSE THE TRIAL COURT DID NOT CONSIDER THE "MITIGATING QUALITIES OF [DEFENDANT'S] YOUTH," AS <u>STATE IN THE INTEREST OF C.K.</u> REQUIRES.

    (A) The <u>Miller</u>/<u>Zuber</u> Jurisprudence

    (B) <u>C.K.</u>: extending the <u>Miller</u>/<u>Zuber</u> Jurisprudence.

We reject these arguments and affirm substantially for the reasons expressed by Judge Billmeier in his well-reasoned memorandum of opinion. Defendant's challenge to the validity of Judge Billmeier's analysis and ultimate outcome lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0382-18