**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1477-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JANEAN D. OWENS, a/k/a
ALICIA SHANTA, and
JANENA QOENS,

    Defendant-Respondent.

_____

Submitted March 4, 2025 – Decided April 30, 2025

Before Judges Gilson, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 04-10-1586, 07-01-0155, and 07-01-0158.

Yolanda Ciccone, Middlesex County Prosecutor, attorney for appellant (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the briefs).

Law Offices of Lora B. Glick, LLC, attorney for respondent (Lora B. Glick, of counsel and on the brief).

PER CURIAM

In 2009, a jury convicted defendant Janean Owens of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), and related crimes of theft and weapons offenses. Thereafter, defendant separately pled guilty to a violation of probation on a previous conviction for third-degree possession of controlled dangerous substances (CDS), N.J.S.A. 2C:35-10(a)(1).

On the manslaughter conviction, defendant was sentenced to twenty-five years in prison with periods of parole ineligibility and supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. She was also sentenced to consecutive prison terms on several other convictions, as well as the sentence imposed for the CDS conviction.

In 2023, defendant moved to change her sentences, contending that the sentences had become illegal under Rule 3:21-10(b)(5) because of sexual assaults and harassment she had endured while in prison. The trial court granted that motion in-part. The State now appeals from the amended judgments of conviction that reduced defendant's sentence on the manslaughter conviction to twenty years and changed the consecutive sentences to run concurrently. Because defendant's sentences were not illegal when imposed, and because those sentences did not become illegal based on her treatment in prison, we reverse

and vacate the amended judgments of conviction entered on November 2, 2023 and December 11, 2023. We reinstate defendant's judgment of conviction entered on November 15, 2012, which was entered in accordance with our remand following defendant's direct appeal.[1]

I.

In October 2006, defendant killed Robert Funderberk by shooting him in the back of his head while sitting behind him in a car. Keith McBride was with defendant at the time of the shooting and afterwards took Funderberk's money and a jewelry chain. McBride and defendant then drove Funderberk's body to Newark and dumped it next to garbage container.

Through subsequent investigations, defendant was linked to the murder. She was arrested and after being given and waiving her Miranda[2] rights, she confessed to shooting Funderberk. She also provided details of her and McBride's actions on the night of the shooting.

A grand jury indicted defendant for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), as well as related charges of robbery, theft, and weapons

---

[1] Defendant is also entitled to the jail credits she was awarded on a motion she made in 2022. Those jail credits should be added to the November 15, 2012 judgment of conviction.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

offenses. Under a separate indictment, defendant was charged with fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a).

Following a ten-day trial conducted in 2009, a jury convicted defendant of first-degree aggravated manslaughter, as a lesser included offense of murder; two counts of third-degree theft, N.J.S.A. 2C:20-3; third-degree conspiracy to commit theft, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:20-3; second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). In a separate trial, the same jury convicted defendant of fourth-degree certain persons not to have weapons.

Defendant was sentenced on June 26, 2009. On the aggravated manslaughter conviction, she was sentenced to twenty-five years in prison subject to NERA. On the conviction for conspiracy to commit theft and the two theft convictions, defendant was sentenced to four years on each conviction and those sentences were run concurrent to each other and consecutive to the manslaughter conviction. On the convictions for possession of a weapon for unlawful purposes and unlawful possession of a weapon, defendant was sentenced to ten years and five years in prison respectively and those sentences were run concurrent to all her other sentences. On the certain persons

conviction, defendant was sentenced to eighteen months in prison and that sentence was run consecutively to her other sentences.

On the same day that defendant was sentenced, she pled guilty to a violation of probation for a previous conviction of third-degree possession of CDS. For that violation of probation, defendant was sentenced to five years in prison and that sentence was run consecutively to her other sentences.

Defendant filed a direct appeal from her convictions and sentences. We rejected her arguments concerning her convictions and affirmed them. We modified her sentences. State v. Owens (Owens I), No. A-0803-09 (App. Div. Sept. 4, 2012). Concerning her sentences, we reversed the decision to make the theft sentences consecutive to the aggravated manslaughter sentence. We also ruled that the conviction for possession of a weapon for unlawful purposes should have merged with the aggravated manslaughter conviction. However, we left the twenty-five-year sentence for aggravated manslaughter in-place. Accordingly, we remanded for resentencing.

On November 15, 2012, an amended judgment of conviction was entered that made the changes we had directed. Thereafter, the New Jersey Supreme Court denied defendant's petition for certification. State v. Owens, 215 N.J. 485 (2013).

In December 2013, defendant filed a petition for post-conviction relief (PCR). In that petition, defendant made several arguments concerning alleged ineffective assistance of her counsel. She did not make any claims concerning her treatment in prison. The PCR court denied defendant's petition and we affirmed that decision. State v. Owens (Owens II), No. A-3871-14 (App. Div. June 8, 2017).

In July 2023, defendant moved to correct her sentences, alleging that her sentences were illegal under Rule 3:21-10(b)(5). She asserted that her sentences should be vacated as unconstitutional and illegal due to the cruel and unusual punishment she had suffered at the Edna Mahan Correctional Facility (EMCF). In her supporting certification, defendant contended that she had been imprisoned in EMCF in June 2009, and for the following fourteen years she had been subjected to sexual abuse by several corrections officers. She also alleged that when she reported those abuses, she was harassed and subjected to retaliation.

On November 2, 2023, the trial court granted in part and denied in part defendant's motion. The court explained the reasons for its ruling in an oral decision read into the record. The trial court acknowledged that there was no court rule or case law supporting the relief requested by defendant. The court

6

accepted defendant's representations regarding her mistreatment at EMCF and then ruled that it would change her two consecutive sentences, for the certain persons not to have weapons and violation of probation convictions, to run concurrent to her sentence for aggravated manslaughter. The court also explained that it was leaving in place the twenty-five-year sentence imposed for the aggravated manslaughter conviction. That same day, the court entered an amended judgment of conviction, changing the consecutive sentences to run concurrent to defendant's sentence for aggravated manslaughter.

Shortly thereafter, defendant moved for reconsideration. Defendant contended that even under the amended judgment of conviction, she would remain in prison and could not be transferred to a halfway house due to the mandatory period of parole ineligibility under NERA. Accordingly, defendant sought to reduce her sentence for aggravated manslaughter from twenty-five years to twenty years.

On December 5, 2023, the trial court conducted a hearing on defendant's motion for reconsideration. At that hearing, the court took testimony from defendant. In her testimony, defendant described the sexual abuse and retaliation she had been subjected to while at EMCF. She also explained that she had been transferred from EMCF to another facility and acknowledged that

7

she had not experienced any incidents of sexual abuse at the new facility. She also stated that she had filed a civil suit because of her mistreatment at EMCF. Ultimately, defendant had prevailed in her civil suit and had been awarded monetary damages for the sexual assaults and mistreatment she had suffered.

On December 11, 2023, the trial court issued an order and written opinion granting defendant's motion for reconsideration. The trial court also entered an amended judgment of conviction, reducing defendant's sentence on the aggravated manslaughter conviction from twenty-five years to twenty years.

In its written opinion, the trial court explained that it was changing its November 2, 2023 decision because its goal had been to allow defendant's immediate release from prison to a halfway house. The court went on to explain that it granted reconsideration because it now understood that to accomplish that objective, defendant's aggravated manslaughter conviction, which was subject to NERA, had to be reduced.

The trial court again acknowledged that there was no direct precedent or rule supporting its determination that defendant's sentence had become illegal because of her treatment in prison. Nevertheless, the court reasoned that the proper "administration of justice" would support changing defendant's sentences. The court also explained that although Rule 3:21-10(b)(5) does not

account for the circumstances of this case, it should allow for a sentence to be considered illegal because of unconstitutional violations that a defendant suffers while in prison. To support that broad proposition, the trial court cited Chief Justice Vanderbilt's observations in State v. Culver, where the Chief Justice noted that "[t]he nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice." 23 N.J. 495, 505 (1957).

The day after the December 11, 2023 amended judgment of conviction was entered, the Department of Corrections notified the State that defendant was being released from prison to a halfway house. The State now appeals from the amended judgments of conviction that were entered on November 2, 2023 and December 11, 2023.

## II.

On this appeal, the State makes one argument, contending that the trial court improperly relied on Rule 3:21-10(b)(5) to reduce defendant's legal sentence. The State candidly acknowledges that defendant was subject to sexual assaults and mistreatment at EMCF. The State contends, however, that defendant's mistreatment does not make her sentences illegal, and that defendant

9

has civil and administrative remedies available to address her mistreatment in prison.

"'An "illegal sentence" is one "not imposed in accordance with the law,"' including a sentence that violates a constitutional safeguard." State v. Ryan, 249 N.J. 581, 592 (2022) (quoting State v. Zuber, 227 N.J. 422, 437 (2017) (quoting State v. Acevedo, 205 N.J. 40, 45 (2011))). In other words, "[a]n illegal sentence is one that is either unconstitutional or not authorized by the New Jersey Code of Criminal Justice." State v. Dunlap, 462 N.J. Super. 274, 283 (App. Div. 2020) (citing Zuber, 227 N.J. at 437).

A defendant can challenge an illegal sentence under Rule 3:21-10(b)(5). That rule states, in relevant part, "[a] motion may be filed and an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice." R. 3:21-10(b)(5). "Whether a sentence is illegal as unconstitutional . . . is a question of law to which a reviewing court affords no deference." State v. Thomas, 470 N.J. Super. 167, 196 (App. Div. 2022) (citing Zuber, 227 N.J. at 437).

Defendant acknowledges that defendant's sentence on the aggravated manslaughter conviction was within the sentencing range for that crime and that the sentence was legal when it was imposed in 2009. See N.J.S.A. 2C:11-4(c)

(stating that the range of imprisonment for first-degree aggravated manslaughter is between ten and thirty years). So, defendant's sentences were authorized under the Criminal Code. Indeed, on defendant's direct appeal, we affirmed the twenty-five-year sentence on her conviction for aggravated manslaughter. Owens I, slip op. at 2.

Rule 3:21-10(b)(5) allows a defendant to challenge a sentence that was or has become unconstitutional. Thus, if there is a change in constitutional law, a defendant may have a right to challenge her sentence as illegal years after it was imposed. See Zuber, 227 N.J. at 437. No case, however, has held that subsequent mistreatment of a defendant in prison transforms the sentence itself into an unconstitutional or illegal one.

Instead, existing case law has held that certain sentences as imposed have later been recognized to be unconstitutional. Accordingly, in Miller v. Alabama, the United States Supreme Court held that it was a violation of the Eighth Amendment to impose mandatory life imprisonment without parole on juveniles who were under the age of eighteen at the time they committed their crimes. 567 U.S. 460, 470 (2012). In Zuber, the New Jersey Supreme Court extended the application of the Miller factors to juveniles facing a term of imprisonment that is the practical equivalent of life without parole. Zuber, 227 N.J. at 428-30.

11

In State v. Comer, the Court held that under New Jersey's Constitution, juveniles who had previously been sentenced to a mandatory prison term of at least thirty years without parole will be permitted to petition for a review of their sentence after they have served twenty years in prison. 249 N.J. 359, 369-70 (2022).

Miller, Zuber, Comer, and the line of cases that follow them, are not applicable to defendant. As already noted, defendant was not a juvenile when she committed aggravated manslaughter. Moreover, there is no recognized constitutional rationale for holding that subsequent mistreatment in prison makes previously imposed sentences unconstitutional. Nor do the facts of this case warrant the creation of a new constitutional right. While there is no dispute that defendant was grossly mistreated while she was serving her sentences at EMCF, she has civil and administrative remedies for that mistreatment. In that regard, defendant filed and prevailed in a civil action regarding the violations of her Eighth Amendment rights while in prison. Moreover, defendant was administratively transferred from EMCF to a new facility.

Defendant concedes that no rule or existing case law explicitly supports her position. In that regard, neither defendant nor the trial court cited to any state or federal cases where a lawfully imposed sentence has been declared

illegal due to sexual assault or mistreatment a defendant suffered while in prison serving the sentence.

Instead, defendant relies on the "fundamental fairness doctrine" and our decision in Thomas. 470 N.J. Super. at 200-01. The defendant in Thomas murdered two teenage acquaintances when he was seventeen years old. Id. at 172. In 1982, Thomas was sentenced to concurrent life sentences, with no parole disqualifiers. Id. at 173. Thomas thereafter became eligible for parole in May 1995, but was repeatedly denied parole. Id. at 174. Thomas thus filed a motion in the trial court for a hearing under Miller to correct his sentence, which he argued had effectively become a life sentence without parole. Id. at 177. The issue in Thomas was "not defendant's sentence, but rather the practices of the [p]arole [b]oard." Id. at 179. In an matter of first impression, we held that a "defendant[] who [had] . . . been imprisoned for more than four decades even though his sentence did not impose a specified period of parole ineligibility[] [had] the constitutional right to an adversarial hearing [on his request to correct his sentence]." Id. at 171. We reasoned that fundamental fairness required relief where "legal concepts [had] hindered defendant's ability to obtain the review to which he [was] constitutionally entitled." Id. at 200-01. Thus, we reversed and remanded the denial of his request to correct his sentence and instructed the trial

court to conduct a hearing as called for in Comer and to consider the Miller factors in determining whether Thomas had achieved maturity and rehabilitation warranting relief under the New Jersey Constitution. Id. at 201.

Thomas does not support defendant's position in this matter. Defendant was not a juvenile when she committed her crimes. More importantly, defendant is not seeking a hearing to address her eligibility for parole; rather she is seeking relief from her underlying sentences. Her sentences, however, were legal when imposed and there is no support for the concept that mistreatment in prison, no matter how deplorable, transforms legal sentences into illegal sentences.

The trial court's decision to reduce defendant's sentence for aggravated manslaughter from twenty-five years to twenty years is also inconsistent with NERA. NERA mandates that defendants convicted of certain crimes be sentenced to a term of imprisonment from which they cannot be released until they have served at least eighty-five percent of the sentence imposed. N.J.S.A. 2C:43-7.2. The New Jersey Supreme Court has explained that NERA is mandatory and once imposed, a NERA term cannot be reduced unless the conviction is revered or the sentence is illegal. See State v. Chavies, 247 N.J. 245, 261 (2021). In Chavies, the Court stated:

> In our view, NERA represents a clear mandate by the
> Legislature that those who commit the most violent of

> crimes must serve [eighty-five percent] of the sentence imposed -- their period of parole ineligibility -- before they are eligible for release under Rule 3:21-10(b)(2). To permit defendant's release in this instance under Rule 3:21-10(b)(2) would effectively reduce his NERA sentence, which the Legislature and the plain language of NERA expressly forbid.
>
> [Ibid. (first citing N.J.S.A. 2C:43-7.2(a); and then citing In re H.D., 241 N.J. 412, 418 (2020)).]

In other words, while the sexual abuse and mistreatment that defendant suffered at EMCF was deplorable, it did not make her sentence illegal under Rule 3:21-10(b)(5) and did not warrant relief from the statutorily mandated period of parole ineligibility under NERA.

Finally, there are two procedural considerations that further support our holding in this matter. First, as already noted, defendant's sentences were affirmed on direct appeal. After the Supreme Court denied certification, those sentences became final. Second, when defendant filed her PCR petition in 2013, she was unfortunately already enduring sexual abuse. Indeed, she testified that her harassment began in 2011. Defendant, however, did not raise the sexual harassment or mistreatment as grounds for PCR.

Having considered this matter in full context, we reverse and vacate the amended judgments of conviction entered on November 2, 2023 and December 11, 2023, as well as all related orders. We remand with direction that the trial

court reinstate the November 15, 2012 judgment of conviction with appropriate jail credits.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

16